## J. W. RIGGAN v. PATTIE A. SLEDGE.

*Practice — Appeal — Case on Appeal — Application to Amend — Affidavit — Mortgage Alleged to have been Procured by Fraud—Participation in by Mortgagor.*

1. Where an affidavit in an application to this Court for leave to apply to the trial Judge to amend the case on appeal by including evidence alleged to have been omitted therefrom, merely states the belief of the appellant that said Judge would make the amendment, but does not set out the grounds for such belief, the application will be denied unless it appears that the omission was made by mistake or inadvertence.

2. In such application it is usual to append the letter of the trial Judge, showing his willingness to amend the case on appeal.

3. A suggestion that an appellant believes that the trial Judge will amend the case is not sufficient to justify a continuance in order that a letter may be procured from the Judge, especially when appellant has had ample time to procure it.

4. Where, in an action for the possession of land sold under mortgage and bought by the mortgagee, the defense was that the mortgage was void for the reason that its execution by the owner was procured through the fraud and deceit of her husband, it was not error to refuse to charge that if the defendant was ignorant of the contents of the mortgage and was induced to sign the same by the fraud and deceit of her husband, then the said mortgage was void, for such instruction omits any reference to the participation in such alleged fraud by the mortgagor.

CIVIL ACTION, for the recovery of land, tried before *Winston, J.*, and a jury, at Fall Term, 1894, of WARREN Superior Court.

The land sought to be recovered was the property of the defendant who, together with her husband, had executed a mortgage thereon to secure a debt to the plaintiff. A sale had been held under the mortgage at which one H. had bid it off but failing to pay the purchase money, he took a

deed and reconveyed to plaintiff. The answer alleged that the execution of the mortgage on the part of the owner had been procured through the fraud and deceit of her husband.

The answer bearing upon this allegation was as follows:

II. In answer to allegation 2 defendant says: That on 24th day of May, 1888, and before that time she was never indebted to the plaintiff in any sum whatsoever, and she denies that part of the said allegation.. She admits that she signed the said bond and mortgage as set forth in said allegation, but avers that she was ignorant of what she was doing; that neither bond nor mortgage was read to her at the time she signed the same or at any time theretofore; and that she was at that time unable to read and write herself; that the reason of her signing the same was that her husband told her that the mortgage was on her stock and not on her land, and she signed the same under this deceit practiced upon her by her said husband, and believing that her said mortgage covered her said stock and not her land.

III. In answer to allegation 3 she says: That that part of said allegation which alleges that she was indebted to the plaintiff is not true, and she denies the same; she admits, however, that she executed the said bond and mortgage named in said allegation 3, but avers that she did so through ignorance; she says that the said bond and mortgage were not read over to her before she signed the same, and that she could not read and write herself: She further says that at and before the execution of said bond and mortgage her husband told her that the said mortgage conveyed only his real estate, in Halifax County, North Carolina, and none of hers was embraced in it, and that under this deceit practiced upon her by her said husband she signed the said bond and mortgage believing that it conveyed no part of her land, but only the land of her aforesaid husband.

On the trial the Court permitted the defendant to amend the complaint by alleging that the fraud complained of was participated in by the mortgagee or that, at least, he had knowledge of the alleged fraud at the time of the execution of the mortgage.

The testimony was in substance as follows:

Defendant and several witnesses testified that Mrs. Sledge never got out of the buggy at all, that only her husband got out and went into the store, and had a private conversation with Riggan, the plaintiff. The witnesses who testified to this were T. J. Stallings and Perry. It was in evidence that Wemyse was at the plaintiff's store on that day and at the request of plaintiff immediately followed Sledge and defendant to Grove Hill, where they went to let private examination of defendant be taken. Riggan, the plaintiff, testified that Wemyse told him he was going to Grove Hill on other business and that he (plaintiff) requested him to bring the mortgage back. Wemyse testified that he went to Grove Hill for the plaintiff for the purpose of bringing back other papers belonging to the plaintiff and perhaps the mortgage also. Riggan, plaintiff, testified that Wemyse did not go to Grove Hill for him (plaintiff) but went on business for himself. Defendant and Sallie Stallings testified that defendant and her husband came straight back from Grove Hill on said day and passed right by plaintiff's store in so doing.

Defendant testified that she never went to plaintiff's store on day of execution of mortgage of 1890. Defendant, Sallie A. Stallings and Sallie Brown testified that defendant did not leave home in a buggy on that day. Defendant and Sallie A. Stallings both testified that defendant did not go to plaintiff's store on that day, but that defendant and her husband walked to Ballard's, J. P., and executed the mortgage there. Edward Brown testified that he had a

conversation with plaintiff at the last Warren Superior Court in Warrenton, in which plaintiff stated that he did not wish Mrs. Stallings (mother of defendant) to know of the execution of the mortgages before they were executed.

The plaintiff J. W. Riggan testified that he never knew, heard of nor had any reason to believe or suspect that Mr. Sledge, husband of 'defendant, either deceived or practiced any fraud upon his wife, or withheld from her any knowledge of the contents of either of said mortgages; he read them over to Sledge and his wife; that the first mortgage (1888) was read over in his store to Sledge and his wife, the defendant, at Mountain View, in the presence of C. N. Riggan, and that Robert Wemyse was sitting in the store a short distance off; that Sledge and his wife had come in a buggy together and that after he read the mortgage over to Sledge and his wife he gave it to Mr. Sledge and that he (Sledge) and his wife got in their buggy, saying they were on their way down to Halifax and would stop at Grove Hill on their way and execute the same before H. T. Edgerton, a J. P.; and said Wemyse said that he was going over to Grove Hill, he would bring said mortgage back; Riggan further testified that he did not say to witness Brown that he (Riggan) did not want Mrs. Stallings to know about the mortgage; said Riggan further testified that the mortgage of 1890 was read over by him to Sledge and his wife at his store at Mountain View; that Mr. and Mrs. Sledge came over and talked over the matter before signing it, and she said she was willing to sign the second mortgage (1890) if I would release the mortgage which I had on their chattels, her husband saying that if I would not release the mortgage on the chattels, he would not have anything to mortgage to get supplies that year, and that he (said Riggan) thereupon agreed to do so, and gave them the 1890 mortgage to carry before Ballard, J. P., to execute,

and a few days thereafter Sledge met me in Warrenton and gave me the mortgage duly executed and proven, and I cancelled the chattel mortgage I had on their property. They did not sign the second mortgage in my presence, but carried it before Ballard, the J. P.

C. N. Riggan testified as follows: I was in the store of J. W. Riggan when Sledge and wife came to execute the first (or 1888) mortgage. They came in buggy together. Both got out and went into store. I heard my father, J. W. Riggan, read the note and mortgage over to Sledge and wife and explain the same to them. Robert Wemyse was in the store at same time. Mr. Sledge took the mortgage and he and his wife got in the buggy and drove off to Grove Hill to execute the same before H. T. Edgerton, the J. P.

The Justice who took the private examination testified that he told the husband in presence of his wife, the defendant, that it was dangerous to give a mortgage; that the land would be sold if he did not mind, and that the husband responded that he was careful, and would sell or had sold some Halifax land with which to pay off the mortgage.

At the close of the testimony and in apt time, the defendant asked for the instruction which is set out in the opinion of Associate Justice CLARK and which was refused.

The Court then instructed the jury that from the admission in the pleadings and the whole evidence, if believed by the jury, the plaintiff was entitled to have the first issue answered "Yes." Under the Court's instruction, the jury so answered. The second issue, by consent, was answered "Sixpence."

The issues to which the above responses were made (the issues were submitted to the jury by consent), were as follows, towit: ' (1) Is the plaintiff the owner in fee and entitled to the immediate posession of the land in contro-

versy? (2) What damages is the plaintiff entitled to recover? The defendant excepted in apt time to the instruction of the Court to so answer said issues. Motion by defendant for new trial overruled. Judgment for plaintiff. Appeal by defendant. The defendant asked no written instructions except those above referred to.

*Mr. C. A. Cook*, for plaintiff.
*Mr. M. H. Palmer*, for defendant (appellant).

CLARK, J.: The appellant avers in his affidavit an omission of the trial Judge to include in the case settled by him certain evidence deemed material by appellant and further his belief that His Honor will make the correction if given an opportunity.

It has been repeatedly held by this Court that the application is insufficient unless it also sets out the ground of such belief that the Court may judge of its reasonableness. *Porter* v. *Railroad*, 97 N. C., 63; *Lowe* v. *Elliott*, 107 N. C., 718, and other cases cited in Clark's Code (2nd Ed.) 549. It is usual to append the Judge's letter to that effect to the affidavit that the Court may pass upon it. It must also appear that the omission complained of was made by mistake or inadvertence. *Bank* v. *Bridgers*, 114 N. C., 107; *State* v. *Sloan*, 97 N. C., 107.

Nor is a suggestion of this kind sufficient to sustain a motion for a continuance in order that the Judge may be applied to for such letter. The appeal has already been docketed several days and there has certainly been ample time since the "case settled" was accessible to appellant in which to apply to His Honor for such statement in writing. *Vigilantibus, non dormientibus leges subveniunt.*

The defendant requested the Judge to charge that if she was ignorant of the contents of the two mortgages and was

induced to sign the same by the fraud and deceit practiced on her by her husband then said mortgages are void and plaintiff cannot recover possession of the land. This omits any reference to the participation in or knowledge of such alleged fraud and deceit on the part of the plaintiff and was properly refused. The privy examination is properly certified. There is no evidence tending to show that the plaintiff participated in or had notice of any fraud or deceit practiced by the husband, if any there was, but there was evidence to the contrary and also evidence that the mortgages were read over to defendant before being signed by her. Indeed, this being a civil case, upon the evidence His Honor might have directed the jury to return the verdict on the first issue in favor of the plaintiff as there was no evidence to the contrary. *State* v. *Riley*, 113 N. C., 648; *State* v. *Shule*, 32 N. C., 153.          Affirmed.

MONTGOMERY, J., having been of counsel, did not sit on the hearing of this appeal.