Ruffin, Judge.
 

 The Court below held the lease by
 
 Purser
 
 conclusive evidence against the Defendant. I think that was erroneous, though it was probably evi-' deuce to some purposes.
 

 St is not to be clearly gathered from the bond, whether the land leased by
 
 Purser
 
 in 1814, was within the lines of his own deed, or not. The words are, •* for the rent of a certain piece of land
 
 under my enclosure,
 
 belong
 
 *260
 
 ing to the heirs of
 
 Smart,
 
 supposed to be about three acres.” The field as laid down in the plat, included a small portion within
 
 Purser’s
 
 lines, and another small portion without them, but within the lines of
 
 Smart’s
 
 deed. The bond does not specify for which of those two pieces the rent wras to be paid. Nor does the other evidence make it more specific ; for the case states only, that the land leased is situate within
 
 Smart’s
 
 boundaries. But that is the fact with respect to both parts.
 

 If in fact,
 
 Purser
 
 did not lease any part of the-land
 
 covered by Ms own deed,
 
 his lease was not evidence to any purpose in this suit. It proved nothing
 
 touching
 
 the tenure or title to his own tract, as it related to one wholly distinct.
 

 But I suppose it is a fair inference from the opinion of theTudge, that the land leased was that part of the field lying within
 
 Purser’s
 
 lines. In that case, the lease was evidence. It forms a circumstance in a question of boundary. It also proves a fact, from which, in a question of title, a jury may infer, as it is supported or rebutted by other circumstances, the true nature of the previous possession by
 
 Purser,
 
 of that and other parts of the tract. The inference would be very strong or very weak, according to those attendant circumstances, and as it might be applied to the particular part leased, or other parts of the land. If, for instance, it were proved, that Purser had at a previous time treated with
 
 Smart
 
 for the occupation of the very same field, the bond would be very cogent proof, that he
 
 always
 
 held
 
 that
 
 field under
 
 Smart,
 
 although the precise contract of lease might not be proved. But when applied to other parts of the tract, the whole force of it would be repelled, by proof that
 
 Purser
 
 was actually living on, and improving large portions of it, independant of
 
 Smart. Purser
 
 might rather surrender three acres, than be involved in litigation.— His doing so is no evidence that lie held the whole as tenant, of another. On the contrary, the lease is evi-
 
 *261
 
 donee, and strong evidence, if he was actually occupying the residue, that he held that residue in his otvn riarht.—
 
 y
 
 o For wliy create a tenancy, expressly for a small part, if it was not intended to exclude the rest ? In tiiis point of view, the contract of 1814 was evidence in this suit. But for aught that appears, it might be as effectual on the one side as the other.
 

 But it by no means follows, that because it is evidence, it is conclusive evidence, even as to the three acres; much less, as to the whole tract. The doctrine of
 
 estop-pel
 
 lias been applied very beneficially to the relation of Landlord and Tenant, whether created by indenture or parol. It lias been properly extended to embrace all cases. It is intended to insure honesty, and protect the landlord against the faithlessness of the tenant. The principle is, that a possession acquired under a particular person, shall not be used to defeat the right of that person. It shall never be turned against him, while the term, according to the express words of its creation, continues $ or after its expiration, while the same possession continues $ as if the tenant holds over, the tenant shall not be permitted to deny the right under which lie'entered, by showing a better right in another, or even himself. Honesty forbids that he should obtain possession witli that view, or after getting it, thus use it. Until therefore the tenant yields back the possession, he shall not be heard in asserting that possession, derived under bis landlord, to be adverse .to him. But the utility and fairness of the rule go no further, For if good faitli forbids the tenant from perverting a possession, gained by another’s permission, into the means of defying the landlord, the latter is equally restrained by it from alleging* that the true owner of the land forfeits it, or passes hiáf title to it, by ignorantly leasing his own land. Having parted with the possession for a certain term, upon a contract that at the end of the term, that possession should, be restored to him, lie can ask such restoration. But h©
 
 *262
 
 can ask nothing more. He then gets back all he parted from. He can properly claim, that his right shall not be impaired by his tenant. But he cannot claim, that it shall be enlarged by the previous and independent title of the tenant himself. Whenever therefore the term expires, and Ihe relation of landlord and tenant ceases, by the surrender or abandonment of the possession, the parties are set at large again. They then stand upon their original rights — or rather, upon their rights as in fact existing, and not as resting in estoppel. The tenant can then sue the landlord upon his own title. The same reason holds for defending himself upon that title, if he acquires a new possession, independent of his
 
 quandam landlord.
 
 It will be readily perceived, that when I speak of the surrender of the possession by the tenant, I mean a real and not a colorable departure by the tenant. — not merely going out one day
 
 animo
 
 revertendi, and coming back the next.
 

 There is however no room for a cavil upon that point here. For
 
 Purser
 
 leased in 1814, and at the end of that year left the land, and the possession remained vacant for nine years. It is impossible to say, that the possession gained or taken under
 
 Smart,
 
 had not determined. The estate created by the lease expired, and the estoppel growing out of it expired with it.
 

 Per Curiam. — Let the judgment below be reversed., and a new trifil granted.