JOHN W. PATE v. LUCY S. TURNER.

*Collusion—Estoppel—Evidence—Landlord and Tenant.*

1. The rule is well settled that one who obtains possession of land under a contract of lease, must restore the possession to him who gave it before he will be permitted to deny the lessor's title, unless he be evicted by due process of law or compelled to yield to a paramount title, and afterwards let into possession by a new and distinct title of a new landlord, and this *bona fide.* The rule extends to the assignees of the term.

2. Where it appeared that the title to the land in controversy was in N, who resided with the plaintiff, her son, by whom her business was managed; that the defendant entered under a lease made with son, in which no reference was made to the mother, and the rents were paid to him; *Held,* that these facts created no presumption that the lease was made on behalf of the mother, and that they furnished some evidence that it was made in the name and for the benefit of the plaintiff.

3. The defendant having entered as the tenant of the plaintiff, pending an action by the latter to recover possession, the counsel for the defendant recovered judgment by default against his client for the possession of the same land, issued a writ of possession, under which the defendant was put off the premises, but her property suffered to remain, and she immediately attorned and re-entered as the tenant of her said counsel; *Held,* that these facts furnished some evidence of a collusive eviction for the purpose of defeating the plaintiff's recovery.

(*Yarborough* v. *Harris,* 3 Dev., 40; *Buswell* v. *Roberts,* 4 Dev., 81; *Lunsford* v. *Alexander,* 4 D. & B., 40; *Callender* v. *Sherman,* 5 Ired., 711; *Freeman* v. *Heath,* 13 Ired., 498; *Gilliam* v. *Moore,* Busb., 95; *Turner* v. *Laws,* 66 N. C., 413, and *Davis* v. *Davis,* 83 N. C., 71, cited and approved).

CIVIL ACTION tried before *Gudger, Judge,* at Fall Term, 1884, of NORTHAMPTON Superior Court.

The suit was begun on October 31, 1870, and is for the recovery of the tract of land described in the complaint, which formerly belonged to one Burwell Pate. He died in 1861, leaving a widow and two children who are the parties litigant in the action. In deducing title, the plaintiff, who administered on the estate of his intestate father, offered in evidence the record of proceedings instituted by himself for license to sell the descended lands, and convert them into assets, under and in pursuance of which he sold and executed a deed for the tract in dispute, to the said Nancy, the purchaser. He next produced a deed from her to himself, bearing date April 23, 1862, wherein a life estate is reserved, and his own deed executed to her, and reconveying the premises on February 28, 1868. The said Nancy died in 1870, and by her will devised all her real estate to the plaintiff. The proceedings for the conversion of the lands into assets were ruled out as insufficient to divest the title acquired by descent.

To estop the defendant from controverting the plaintiff's title, he introduced evidence to show a renting from him of the prem-

ises by one Gray in December, 1868, for one year, under which the defendant and her husband, then living, were let into the possession, and that upon his death during the lease, in 1869, the defendant continued in the occupation of the land.

In November, 1875, R. B. Peebles, claiming the land, commenced an action against the defendant and the plaintiff to recover possession, and at Spring Term, 1876, obtained judgment by default against both for want of an answer. This judgment was afterwards, by consent, set aside as to the plaintiff, who then put in his answer, in which he denies the plaintiff's title, and also his own possession. At Fall Term, 1879, the cause came on for trial between these parties, and the plaintiff in that action, finding that he could not prove the possession as to the present plaintiff, entered a *nol. pros.* as to him, leaving the judgment in force against the present defendant. He then sued out a writ of possession, upon which the sheriff made return that he had put her out of, and said Peebles in possession of, the premises. The *bona fides* of this action being controverted, the testimony on the subject was in substance this : The defendant Lucy stated that, after being told by the sheriff that he had come to remove her from the land, and she must go out into the public road, which she did, and she then made the contract and re-entered, not being angry at what was going on.

James A. Parker, the acting deputy of the sheriff in executing the writ, testified to his taking her to the road, and there delivering possession to the agent of R. B. Peebles, and to her renting the premises, which he thinks took place in the house ; that while passing out the defendant remarked, " that Capt. Peebles (referring to the recovering plaintiff) was her friend, and she did not think he would do her any harm "—nor did she show any anger while the removal was going on.

E. J. Peebles, the agent, testified to the same facts about the execution of the writ, and the renting by him on behalf of his principal, who had directed him to receive possession from the officer, and then to rent to the defendant, and if she would not

4

rent, then to some other person; that he returned with her to the house and there they made the contract; and that her goods were not removed, but remained in the house.

R. B. Peebles testified, that the action of ejectment was prosecuted in good faith, in order that the title might be adjudicated, and he consented to the *nol. pros.* as to the said John W. Pate, because he denied his possession, and witness was unable to prove the fact; that he received a bale of cotton for rent; that he has been counsel for defendant in this action from its inception; that he has had no communication with the defendant in regard to the eviction or renting, other than as testified through his agent.

Records were produced to show that the said R. B. Peebles derived his title to the land under an execution sale against the plaintiff which was inoperative, his estate having been previously divested by a sale under execution issued upon the same judgment, and the proceeds of which, less the costs, had been received by him as attorney of the plaintiff in that suit, in part discharge of the judgment debt, from the sheriff. The record was to this effect: The judgment was rendered at Fall Term, 1862, in favor of Mary E. Phillips against said John W. Pate, administrator of Burwell Pate, N. Harris, and Henry Pate, upon which executions issued to the sheriff and he made return of no property to be found. Thereupon process was issued against said John W. Pate, to subject his own estate to the payment of said moneys, in pursuance of which judgment, directing execution to issue *de bonis propriis* against said Pate, at Special January Term, 1873, of the Superior Court of Northampton, and such execution accordingly issued. By virtue of this writ, the estate of said Pate in the tract, and in another sold at the same time, were sold at public sale, and bought by William T. Stephenson for two hundred and twenty-two dollars, of which, after retaining the costs, the residue, one hundred and sixty-eight dollars, were applied to the debt, and paid over to said Peebles, attorney for one Long, to whom the judgment had been assigned, as appears in the sheriff's return and the attorney's receipt on

the writ. The sheriff accordingly, on the same day, conveyed the two tracts to the purchaser.

On June 8, 1874, another execution was sued out on the same judgment, with the endorsements entered upon that by virtue of which the previous sale was made, and the tracts again exposed to sale by the sheriff, when said Peebles became the purchaser of both tracts at the price of five dollars for each.

A record was also produced showing that an action was begun September 21, 1880, by Henrietta Pate, wife of John W. Pate, whom she married in 1858, and by whom she had four children, against the heirs-at-law of said William T. Stephenson, to enforce specific performance of an alleged agreement between her and the intestate purchaser Stephenson, by which he agreed that if she would pay off a certain debt, he would convey the tracts to her, and in which she alleges full performance; and such proceedings were had in the cause, that at Spring Term, 1881, a decree was entered declaring the facts and the said Henrietta's title to the land, and directing a conveyance in fee to be made to her, and appointing a commissioner to execute a deed therefor, two of the defendants being infants, but represented by a guardian *ad litem.*

These are the material facts, extracted with no little difficulty from the confused papers, in manuscript, sent up.

The record shows that three issues were passed upon by the jury :

I. Is the plaintiff the owner in fee simple and entitled to the immediate possession of the land described in the complaint?

Answer—Yes.

II. Is the defendant in the wrongful possession of said land, and does she wrongfully retain the same from the plaintiff?

Answer—Yes.

III. What damage has the defendant sustained by such wrongful withholding of possession ?

Answer—From 1870, $20 per year, $280.

The series of exceptions to the records offered in evidence, that of the suit of Phillips *vs.* Pate and others, and that of Henrietta Pate *vs.* the heirs-at-law of Stephenson, with all the proceedings in each, as well as the deeds in furtherance of what was done, is removed in the direction to the jury to discard them from their consideration.

The controversy seems to have been mainly upon the question whether the original renting, by virtue of which the defendant and her husband entered into possession, was by the plaintiff on his own behalf, or for his aged mother, to whom he had conveyed the land, and in whose business he acted generally as her agent: And secondly, whether the eviction and renting to the defendant had the effect of annulling the previous tenancy, and denying the plaintiff's title.

The Court was asked by the appellant to instruct the jury as follows :

I. The complaint alleges no tenancy in the defendant's occupation, and it is not involved in the controversy. This was refused.

II. If there were such tenancy, it terminated by the eviction, and the defendant's occupation of a new lease from Peebles, who claimed to hold by title paramount, removed the estoppel. This instruction was given with the additional words, " if *bona fide.*"

III. There is no evidence that the eviction was collusive and fraudulent. Refused.

IV. The plaintiff, upon the evidence, is not entitled to recover. Refused.

V. There is no sufficient evidence that the defendant or her husband rented from the plaintiff acting for himself. Refused.

VI. The alleged title being in said Nancy at the time of the renting, and plaintiff being her general agent, the presumption is that the lease was made by him in the exercise of his agency. Refused. Instead, the Court charged the jury that it was for them to say, upon the evidence, from whom the land was rented

by Gray—whether from the plaintiff, or his mother through him.

VII. There is no evidence to rebut the presumption of a renting from the said Nancy. Refused.

VIII. The plaintiff must have title at the time of commencing his suit, and at the trial. Refused.

IX. The evidence shows that the title was not in the plaintiff, but in his wife, and the issue as to title should be answered in the negative. Refused.

X. As plaintiff relies on his right to possession upon his alleged principal title, and the evidence being that he had none such at the commencement of the action or time of trial, the jury should find the latter part of the first issue in the negative, and respond to the entire issue—No. Refused.

These rulings furnish the ground of the exceptions to the refusal of instructions asked.

The Court, withdrawing the records already referred to from the jury as irrelevant and useless, proceeded to charge them:

I. If they should find that Gray rented the land from the plaintiff and not from his mother, and leased the same to the husband of defendant, and they, in pursuance of the contract, entered upon and occupied the land until his death, and she has since remained there and never surrendered possession, she is estopped from denying plaintiff's title.

II. If the jury find that the defendant was *bona fide* and in good faith evicted by the sheriff under the execution, she is not estopped from disputing the plaintiff's title, even if the lease was from him—but if the eviction was not in good faith, but a mere contrivance between her and the plaintiff in the ejectment suit against her, in order to gain an advantage in this action, the eviction amounted to nothing, and the estoppel, arising from the first renting, if from the plaintiff, would remain.

III. If the renting was not from the plaintiff, but from said Nancy, no estoppel would be created, and plaintiff could not recover.

The defendant also excepted to the charge as given.

The verdict being for the plaintiff, and judgment rendered thereon, the defendant appealed.

*Messrs. R. O. Burton Jr.*, and *Willis Bagley*, for the plaintiff.
*Messrs. W. H. Day* and *R. B. Peebles*, for the defendant.

SMITH, C. J. (after stating the facts).   We find no error in these rulings.ᐟ The two material questions of fact in reference to the original renting, and the attempt to change the tenancy, and continue the defendant's possession, were for the jury to pass .on, and were properly left to them.   The transaction of Gray was with the plaintiff apparently acting for himself, and his mother's name was not mentioned in the transaction.   So, the rent was in like manner paid to him, as if he were entitled to it.   This was certainly some evidence of his personal relation to the contract, and its weight has been passed on by the jury. Perhaps the jury might have been warranted in drawing the inference from the possession of title, that the lease was for the owner, as upon the evidence they are in finding it to be the personal transaction of the plaintiff.

2.  The nature and effect of the eviction was also properly committed under restrictions to the jury, and these instructions are certainly not unfavorable to the defence.

The attorney who had been defending the action from its beginning, institutes his action for possession against the defendant, and she makes no resistance to judgment as did the other defendant, the present plaintiff, as to whom the *nol. pros.* was entered.

No anger was excited in executing the process for dispossessing her.   She spoke of her confidence in her attorney's kind disposition ; her household goods were left in the house undisturbed while the eviction was going on ; the defendant re-enters under a new contract with the one who has dispossessed her, and remains to set up the new defence.

It. certainly cannot be contended that these facts furnish no evidence of collusion, that is, of a course of action which shall

keep her in possession, and enable her to violate the well-settled rule, that a tenant obtaining possession under a contract of lease, must restore the possession to him who gave it before she can set up title in herself or in any one else.

This is the general rule.   But if evicted by process of law, or yielding to the demand of one who has a paramount title, the landlord's action may be resisted by showing the fact.   But an essential condition is the existence of a superior title in the claimant evicting or entering.   Bigelow on Est., 407.   Here no proof whatever was offered of a superior title, and no opposition made to the judgment.   It is in substance, a voluntary act of submission to an unsustained demand, and can no more remove the obligation to surrender, than the execution of a deed, and recognition of its efficacy as a protection.   The rule which forbids a tenant who has been let in possession by a contract of lease from disputing the landlord's title without restoring the possession after the termination of his lease, " is founded," in the words of HENDERSON, Chief-Justice, " on high grounds of morality and good faith, and at all times ought to be rigidly adhered to, where circumstances require its application."   *Yarborough* v. *Harris*, 3 Dev., 40, and this is repeated by RUFFIN, Chief-Justice, in *Burwell* v. *Roberts*, 4 Dev., 81.

The rule applies with equal force to a lessee's assignee or under tenant.   *Lunsford* v. *Alexander*, 4 Dev. & Bat., 40; *Callender* v. *Sherman*, 5 Ired., 711.

A lessee cannot deny his lessor's title, until discharged from the estoppel, by yielding up possession to the lessor; nor will his acceptance of a lease from another lessor enable him to do so, *Freeman* v. *Heath*, 13 Ired., 498, unless when he has been evicted and afterwards let in possession by a new and distinct title of a new landlord, and this *bona fide*.   *Gilliam* v. *Byrd*, Busb., 95.

An exception to the rule is, that where a lessee could have gone into equity and obtained an injunction against being turned out of possession, upon some equitable grounds.   He may now set

this equity up in an action by the landlord. *Turner* v. *Lowe,* 66 N. C., 413; *Davis* v. *Davis,* 83 N. C., 71.

While, therefore, we find no error in the ruling, it would be obviously unjust to give a conclusive effect to a finding and judgment, that title is in the plaintiff, which, as *res adjudicata,* would preclude all future inquiry into the title, when the result is produced by an estoppel, which only prevents a retaining of the tenant's possession. Upon the admitted evidence in this case, the moiety in the land descending to the defendant as one of two heirs-at-law as co-tenant, the plaintiff, incurs the disability of contesting his claim of ownership upon a technical rule growing out of her husband's lease and acquirement of the possession—continuing in consequence of her continuance in occupancy. In this case the verdict rests wholly upon the estoppel, and the judgment, without finally determining the title, should be merely for the recovery of possession and damages, leaving the defendant free hereafter to assert and maintain her own title.

The judgment thus modified must be affirmed.

No error.                             Affirmed.