CAMPBELL v. EVERHART.

(Filed November 15, 1905).·

*Deed to Heirs of Living Person—Unborn Children—Eject-
ment—Title, How Shown—Adverse Possession—Estop-
pel—Instructions—Opinion on Facts by Judge—Sufficien-
cy of Evidence—Parental Relations—Evidence—Census
Lists—Transactions with Deceased.*

1.  By virtue of section 1329 of The Code, a deed conveying land di-
    rectly to the "heirs" of a living person, passes whatever title the
    grantor had to the children of such person.

2.  By virtue of section 1328 of The Code, a child if *en ventre sa mere*
    at the time the deed was executed took as tenant in common
    with the living children.

3.  A plaintiff in order to recover in an action of ejectment, must show
    a title good against the world or good against the defendant by
    estoppel.

4.  In an action of ejectment plaintiff makes out a title *prima facie*
    good against the world when he shows a grant from the State
    and *mesne* conveyance connecting him with the grant, or by
    proving title out of the State by grant duly issued or by an ad-
    verse possession for 30 years without regard to the number or
    connection of the tenants, and 20 years' adverse possession in
    himself, or those under whom he claims or such a possession of
    7 years, under color, or by showing 30 years' adverse possession
    by himself, or by some one person and *mesne* conveyances connect-
    ing him with the title thus acquired by that person as against
    the State, or by showing adverse possession by himself, or those
    under whom he claims for 21 years, under color.

5.  In an action of ejectment, plaintiff makes out a title *prima facie*
    good against the defendant by showing an estopel arising out of
    the fact that the defendant obtained possession of the land as
    tenant of the plaintiff, or by his permission, or by connecting the
    defendant with the common source of title, showing in himself
    an older or better title from that source.

6. Where a party takes possession of land under another, he is not allowed to dispute the latter's title until he has given up the possession so acquired, and the rule applies with equal force to a person who continues a possession antecedently held by him with the consent of the party whose title is in question.

7. When possession is wholly restored to the party who gave it, the estoppel no longer applies, and the party formerly affected by it can stand upon his original right and set up any right or title he may have to the property surrendered.

8. It was error to instruct the jury that the deed was sufficient of itself to vest the title in the grantees therein, where plaintiffs' right to recover was dependent upon evidence that the defendants' grantor was estopped to claim the land, and there was no evidence of title in the grantor of plaintiffs' ancestors, as the credibility of the witnesses was a matter for the jury to pass upon, and the court in deciding this question, invaded their province, contrary to the provision of section 413 of The Code.

9. Evidence should raise more than a mere conjecture as to the existence of the fact to be proved.

10. When this court says that there is no evidence to go to the jury, it is not meant that there is literally and absolutely none, but there is none which ought reasonably to satisfy the jury that the fact sought to be proved is established.

11. It is a general rule that, as between those occupying parental and filial, or *quasi* parental and filial relations, the possession of one is presumed to be permissive and not adverse to the other.

12. The recital in the deed of plaintiffs' grantor that H. (the character of whose possession was at issue) paid her the consideration is not competent against the defendants, nothing else appearing.

13. A census list (found in the clerk's office) was not competent evidence to show that one of the grantees was not *in esse* at the date of the deed—census reports being competent only to prove facts of a public nature.

14. Testimony of a witness interested in the event of the action, as to transactions or communications between him and a deceased person from whom the defendants derive title, is not competent against them, the extent of the interest not being material.

ACTION by R. G. Campbell and others against Chas. Everhart and others, heard by *Judge Henry R. Bryan* and a jury, at the April Term, 1905, of the Superior Court of DAVIDSON County.

This is an action for the recovery of real property, a parcel of land in Lexington township. Plaintiffs, in support of their claim to title, put in evidence a deed dated November 22, 1870, from Susan Humphreys "to the lawful heirs of B. F. Hilliard and their heirs." Hilliard was the son of Susan Humphreys and the plaintiffs are the grandchildren of said Hilliard and claim under the deed for the reason that their mothers (who are now dead) were the children of Hilliard and therefore answer to the description in the deed of the persons who were intended to take thereunder. There was no proof of title in Susan Humphreys, but. there was testimony which plaintiff insists tended to show that Hilliard either entered upon the land originally or continued in possession after the date of the deed to his heirs (22nd Nov., 1870), by her permission, and is, therefore, estopped to deny her title. It is unnecessary to set out this testimony in order to an understanding of the point upon which the case is decided. There was testimony to the effect that Hilliard had occupied the land for twelve years prior to the date of the deed of Mrs. Humphreys in 1870, and that he continued in possession until his death in 1898, with brief interruptions, his children living there with him most of the time during their minority and after they became of age, and that he had conveyed a part of the land to his wife and other portions to Darr and Leonard.

The court charged the jury, among other things not necessary to be stated, as follows: "(1) The burden of the issue is upon the plaintiffs. They must recover upon the strength of their own title and not the weakness of the defendants. They must show title in themselves, and that they were entitled to the possession at the commencement of the action.

CAMPBELL *v.* EVERHART.

(2) The court instructs the jury that the deed introduced by the plaintiffs in this action is sufficient to vest in them the legal title to the land described in the complaint and to authorize them to take possession of the same, nothing else appearing." Defendants excepted.

And in response to prayers from the plaintiffs, the jury were instructed as follows: "(1) There is no evidence of exclusive, continuous and adverse possession under color of title on the part of the defendants for seven years, and unless you find from the evidence that the defendants have had adverse and exclusive possession for the period of twenty years under known and visible metes and bounds, you will answer the first issue 'Yes.' Defendants excepted. (2) The court charges you that there is no evidence that the defendants have had adverse and exclusive possession under known and visible metes and bounds for the period of twenty years, and you should answer the first issue 'Yes.' Defendants excepted. (3) The court charges you that the deed of 1870 from Susan Humphreys to the lawful heirs of B. F. Hilliard was the same in law as if it had been made to the children of B. F. Hilliard, and conveyed a valid title from Susan Humphreys to the children of B. F. Hilliard then living, and if you find from the evidence that Margaret Lenora Wood was born in April thereafter, she would in law be included as one of the children then living, and would be within the description of the grantees in the deed. Defendants excepted."

The court refused the following prayers of the defendants: "(1) The court charges you that the deed from Susan Humphreys to the lawful heirs of B. F. Hilliard is invalid and null and void for want of grantees, and the jury should answer the first issue 'No.' (2) That there is no evidence to go to the jury that Susan Humphreys, at the time of the execution of the deed, owned said land or was in possession thereof or had any right to convey the same, and the jury should answer the first issue 'No.' (3) That if the jury shall

find from the evidence that prior to the execution of the deed from Susan Humphreys to the lawful heirs of B. F. Hilliard, said B. F. Hilliard was in the open, notorious and adverse and exclusive possession of the land in controversy and continued to so hold the same up to his death, and that after his death, his widow, V. A. Hilliard, held the same under him by deed from B. F. Hilliard introduced in evidence,' and her grantees so continued to hold adverse possession thereof up to the commencement of this action, then the plaintiffs would not be entitled to recover and the jury should answer the first issue 'No.' (4) That in passing upon the question of adverse possession, the jury should consider the fact, if they find such to be the fact, that B. F. Hilliard; from a time prior to the year 1870 and up to his death, was in receipt of the rents and profits of said land, paid taxes thereon, lived on the same for a large part of the time, conveyed a large portion of the tract by deed to his wife, and other portions thereof by deed to Darr and Leonard, witnesses for defendants, and that Jane Campbell and Lenora Wood, plaintiffs' ancestors, never made any claim to said land, if the jury find they made no claim thereto, and if upon the whole evidence the jury shall find that defendants and those under they claim have held continuous, adverse exclusive possession thereof for the years succeeding the year 1870, then the jury shall answer the first issue 'No.' (5) The fact that Jane Campbell and Lenora Wood, ancestors of the plaintiffs, lived with their father a part of the time on the land in controversy as members of the family, as children live with their parents, would not put them in possession of the land under their own right, nor interrupt their' father's adverse possession, if the jury shall find his possession was adverse, until they made some claim to own the same, and if 'the jury shall find from the evidence that the children so lived with their father as members of his household, and not under any claim or right of their own, and if the jury shall further find that defendants and those under

whom they claim have been in the continuous, ,exclusive, adverse possession thereof from the year 1870 and prior thereto, then the plaintiffs are not entitled to recover and the jury shall answer the first issue 'No.' (6) That Fred Hilliard, a son of B. F. Hilliard, born in lawful wedlock, though begotten after the execution of the deed from Susan Humphreys to the lawful heirs of B. F. Hilliard, would share in said land, and under the same there are four children to take the same, viz.: Sallie Hilliard, Jane Campbell, Lenora Wood and Fred Hilliard, or the heirs of such of them who are dead, and in no event can plaintiffs claim more than one-half of the land and the jury should answer the issue accordingly."

There was a verdict and judgment for the plaintiffs and defendants, having duly excepted to the rulings of the court, appealed.

*Watson, Buxton & Watson, Walser & Walser* and *King & Kimball* for the plaintiffs.

*McCrary & Ruark* and *E. E. Raper* for the defendants.

WALKER, J., after stating the case. The first question raised in this case calls for a construction of the deed from Mrs. Humphreys to the heirs of her son, B. F. Hilliard, and also involves its validity. We have no doubt as to either proposition thus presented. At common law, a conveyance could not be made directly to the heirs of a living person, simply because a living person could have no heirs *in presenti.* The rule of the law then was, *Nemo est haeres viventis.* This maxim was originally and generally applied to both wills and deeds and its proper translation was that, "No one can be heir during the life of his ancestor." And though a party may be heir apparent or heir presumptive, yet he is not heir, living the ancestor, and therefore, when an estate was limited to one as a purchaser under the denomination of heir, heir of the body, heir male or the like, the party could not take as pur-

chaser unless, by the death of the ancestor, he has, at the time
when the estate is to vest, become the very heir.   But this
rule was relaxed by the courts and an exception engrafted on
it, and, if there was sufficient on the face of a will to show
that, by the word "heir," the testator meant heir apparent, it
should be so construed; and in such case the popular sense
was allowed to prevail against the technical.   In other words,
it appears to have been established by the authorities that,
*prima facie,* the word "heir" should be taken in its strict
legal sense, but, if there was a plain demonstration in the
will that the testator used it in a different sense, the court
would assign that meaning to it, what was sufficient to show
that the testator did not intend that it should have its tech-
nical construction, depending largely upon the language em-
ployed in connection with it and the circumstances under
which the word was used.   Broom's Legal Maxims (8th Ed.),
521, marginal page, 523.   It was likewise held in the case
of a will that the rule had no place, if the testator knew of
the existence of the parent and intended his devise to take
effect during his life.   Broom, 524.   One reason for the re-
laxation of the rule in the case of wills was, that the testa-
tor might be *inops consilii* and the instrument therefore was
construed so as to effectuate his intention.   But the maxim
was also extended to deeds, and a limitation (the word is here
used in the sense of conveyance) "to the heirs of a person,"
who is living, was held to be void for uncertainty, as no one
can in any proper sense be the heir of a living person and it
could not therefore be known who were to have the benefit of
the conveyance, but it was likewise the rule in regard to a
deed that, if anything appeared on its face to indicate that
the grantor used the word "heirs" as *designatio personarum,*
or if a preceding estate was created so as to make the limita-
tion to the heirs of the living person a contingent remainder
depending for its vesting upon the event of the death of the
ancestor before the life estate terminated, the word "heirs"

was construed to mean children. It has always been true, both in the case of deeds and of wills, that if the instrument shows who the grantee is or if it designates and so describes him that there is no uncertainty respecting the party who is intended to take under the will or deed, it is not of vital consequence that the matter which establishes his identity is not in the common or best form or expressed with technical nicety or accuracy or in the usual or most appropriate position in the instrument. Devlin on Deeds, sections 184 and 185; 2 *Ibid.*, sec. 364 and note 11, where cases from this and other States are collected. 3 Washburn on Real Property, 282. But at common law where the limitation in the deed was simply to the heirs of a living person and nothing else appeared to indicate the special intention of the grantor as to who should take, the deed was void because no grantor was sufficiently designated. Our statute completely reverses this principle, and now, by virtue, of its wise provision, such a limitation is conclusively presumed to be intended for the children of the person named therein. The language of the statute is too plain for any possible doubt as to its true meaning. It is as follows: "Any limitation by deed, will or other writing, to the heirs of a living person, shall be construed to be to the children of such person, unless the contrary intention appear by the deed or will." Code, sec. 1329. But the defendants' counsel contends that the use of the word "limitation" in the statute takes our case out of its operation, as the deed in this case is, in effect, a direct conveyance to the heirs of B. F. Hilliard without the creation of any preceding estate to be "limited" or determined by the happening of a future event or the performance of any condition. The fallacy of this contention is to be found in the misapprehension of the true legal definition of the word limitation. It has a twofold meaning, says Mr. Fearne. We quote his own language: "Great confusion has frequently arisen from not observing that the word limitation is used in two different

senses: the one of which may, for the sake of convenience of distinction, be termed the original sense; namely, that of a member of a sentence, expressing the limits or bounds to the quantity of an estate; and the other, the derivative sense; namely, that of an entire sentence, creating and actually or constructively marking out the quantity of an estate." 2 Fearne on Remainders (4th Am. Ed.), sec. 24, marg. page 10. In our statute, the word is manifestly used in its derivative or secondary sense, which is made very clear to us by the learned, able and elaborate opinion of *Chief Justice Shepherd* in the leading case of *Starnes v. Hill,* 112 N. C., 1, remarkable for its lucidity of statement and the strength and cogency of reasoning from ancient and well settled principles of the law by which it distinguished between vested and contingent remainders and further sustained the conclusion of the court, that this statute did not abolish the Rule in Shelley's case, but was intended merely to give effect to the intention of the maker of the instrument, namely, that the persons for whose use and benefit it was made should take either directly or indirectly as purchasers, and to cure what was supposed to be the defect in, and to remove the injustice of the rule of the common law. *Starnes v. Hill, supra.* Under this construction of our statute, Margaret Hilliard (afterwards Margaret Wood), if *en ventre sa mere* at the time the deed was executed, took as tenant in common with the living child or children, who at the time answered to the description of "lawful heirs" of their father. She would not have taken anything at common law, as she was not actually *in esse* at the date of the deed and no one was appointed to preserve the use to her. In *Dupree v. Dupree,* 45 N. C., 167, *et seq., Pearson, J.,* speaking of a conveyance immediately to an unborn child, says: "Property must at all times have an owner. One person cannot part with the ownership unless there be another person to take it from him. There must be a 'grantor and a grantee, and a thing granted.' We have no sort of

doubt that Mrs. Goff intended all the children of Robert and Rachael (Peggy Ann excepted), without reference to the time of their birth, to be participants of her bounty; and the only regret is that she did not call upon a lawyer, who would have drawn a conveyance passing the property to a trustee, by which the uses could have been kept open until the death of Mrs. Dupree, so as to let in all of her children. But she chose to make a common law conveyance directly to the children; and of course no other could take under her deed of gift except those *in esse,* or, as my *Lord Coke* expresses it, *in rerum natura,* when the right of property passed out of her, to-wit: at the date of the deed of gift. The owners were then called for and it was then necessary for them to take the property. The plaintiff could not answer the call, and there is no rule of the law by which we can give him another day." See also *Heath v. Heath,* 114 N. C., 547. This rule of the common law has been changed by the statute to the extent that it affected a child *en ventre sa mere.* It is now provided by statute that "an infant unborn, but *in esse,* shall be deemed a person capable of taking, by deed or other writing, any estate whatever in the same manner as if he were born," that is *in rerum natura.* Code, sec. 1328; *Heath v. Heath, supra.*

It comes to this, therefore, that the deed was sufficient in form and substance to pass whatever title Mrs. Humphreys had in the land to the children of B. F. Hilliard, her son. But we are brought now to the consideration of the question; did she have any title to pass? A plaintiff in order to recover in an action of ejectment, must show a title good against the world or good against the defendant by estoppel. He makes out a title *prima facie,* under the first branch of the requirement, when he shows a grant from the State (the origin and source of all title to land), and *mesne* conveyances connecting him with the grant, or by proving title out of the State, by grant duly issued or by an adverse possession for 30 years

without regard to the number or connection of the tenants, and 20 years' adverse possession in himself, or those under whom he claims or such a possession of seven years, under color, or by showing 30 years' adverse possession by himself, or by some one person and *mesne* conveyances connecting him with the title thus acquired by that person against the State (the law presuming not only title out of the State by virtue of the possession for 30 years, but also a grant to the person who has thus held the possession for 20 years of the time. *Bryan v. Spivey,* 109 N. C., 57) ; or by showing adverse possession by himself or those under whom he claims for 21 years under color; or by showing an estoppel arising out of the fact that the defendant obtained the possession of the land as tenant of the plaintiff or by his permission, or, lastly, by connecting the defendant with a common source of title showing in himself an older and better title from that source, the law, by a rule of evidence, established for convenience, not requiring in such a case proof of title beyond the common source. This rule is sometimes called an estoppel, whether erroneously or not we need not decide. *Alexander v. Gibbon,* 118 N. C., 796; *Newlin v. Osborne,* 47 N. C., 164; *Frey v. Ramsour,* 66 N. C., 466; *Caldwell v. Neely,* 81 N. C., 114; *Christenburg v. King,* 85 N. C., 229. The method of proving title to land is well stated by *Avery, J.,* in *Mobley v. Griffin,* 104 N. C., 112. In what we have said, no reference is made to the particular nature of the possession necessary to bar the entry of the State, or to the manner in which the connection between the successive tenants, when required, must be shown. This matter is fully discussed by *Justice Connor* in *Jennings v. White,* at this term.

If we apply the above stated principles to the facts of this case, we find that no evidence has been adduced to show any title in Mrs. Humphreys when she made her deed to the plaintiffs' ancestors, unless the testimony introduced tended to show that her son, B. F. Hilliard, either entered into pos-

session or continued his possession by her permission and
thereby estopped himself, so long as he retained that posses-
sion, to deny her title. It is undoubtedly true that, where a
party takes possession of land under another, he is not al-
lowed to dispute the latter's title until he has given up the
possession so acquired. The whole doctrine upon which the
estoppel rests in such cases is most clearly and forcibly stated
by *Dillard, J.,* in *Farmer v. Pickens,* 83 N. C., 549. "It is
settled," says he, "that a person accepting a lease from an-
other is estopped during the continuance of the lease, and af-
terwards, until he surrenders the possession to his landlord, to
dispute his title, it being a rule founded on a principle of
honesty which does not allow possession to be retained in vi-
olation of that faith on which it was obtained or continued.
*Hartzog v. Hubbard,* 19 N. C., 241; *Lunsford v. Alexander,*
20 N. C., 166; *Smart v. Smith,* 13 N. C., 258; *Barnett v. Rob-
erts,* 15 N. C., 81. The rule between lessor and lessee extends
equally to one who takes or holds possession under a contract
of purchase, and he is not permitted to controvert the title of
him under whom he entered or by whose consent he has con-
tinued a possession. *Love v. Edmonston,* 23 N. C., 152." And
the rule applies with equal force to a person who continues
a possession antecedently held by him with the consent of the
party whose title is in question. It is said in the same case,
"The rule best supported by authority, English and Ameri-
can, as stated by Bigelow in his work on Estoppel, at pages
397 and 398, to be, that an anterior possession does not vary
the application of the rule, on the ground that although the
party asserting the estoppel may not have lost the advantage
of parting with the possession, yet by attornment to him or
the new relation of vendor and vendee, he may have been led
into some omission or conduct prejudicial to his title which
otherwise would not have been. In this State the rule is
held to be, that a possession previous to a lease or contract
of purchase does not let in the party to dispute the title which

he had recognized." *Springs v. Schenck,* 99 N. C., 551. The rule affects as well the assignee or undertenant of the person, who has thus acquired the possession of the land, as it does the assignor. *Lunsford v. Alexander,* 20 N. C., 40 (Reprint, 166); *Pate v. Turner,* 94 N. C., 47; *Bonds v. Smith,* 106 N. C., 553. But the estoppel lasts no longer than does the possession so acquired and on which it is founded. When possession is wholly restored to the party who gave it, the estoppel no longer applies, and the party formerly affected by it can then stand upon his original right, to which he is fully remitted, for reason being the soul of the law, when the reason of any particular law ceases, so does the law itself. Having given up that which he gained by reason of the favor or consent of another and which might prejudice the latter if he retained and asserted title in himself, he is at perfect liberty to set up any right or title he may have to the property surrendered, for he is not then bound in good conscience or in fairness to do otherwise. The plaintiffs, therefore, may show, if they can, that Hilliard entered upon the land or continued in the possession of it as the tenant of Mrs. Humphreys or in subordination to her, and the defendants may show, if they can, that he or those claiming under him, have surrendered the possession, so that now they may rely on any title that Hilliard had or that they have acquired in the premises. It follows, as a matter of course, that there was error in the charge in so far as the jury were told that the deed of Mrs. Humphreys to Hilliard's heirs at law (now construed to mean his children), was sufficient of itself to vest the title to the land in them. This was equivalent to a peremptory instruction, binding upon the jury, to find for the plaintiff, whereas the deed of itself could not pass a title the grantor did not have, and if the testimony was legally sufficient to show such a possession in Hilliard, under Mrs. Humphreys, as raised an estoppel against him, it consisted in the alleged declarations of Hilliard to Tussey and others and the credibil-

ity of these witnesses was surely a matter for the jury to pass upon. The court in deciding this question for them, invaded their province, contrary to the provision of The Code, section 413, which requires that in charging a petit jury in a case, the court shall not give an opinion whether a fact is fully or sufficiently proven, such matter falling within the true province of the jury, but shall only state the evidence and declare and explain the law arising thereon.

We have not passed upon the sufficiency of the testimony to show an estoppel, as the question may not be presented to us again and if it is the evidence may not be just as we find it in this record. It may be stronger or weaker than it now is. We may say generally that evidence should raise more than a mere conjecture as to the existence of the fact to be proved. The legal sufficiency of proof and the moral weight of legally sufficient proof are very distinct in the conception of the law. The first lies within the province of the court, the last within that of the jury. Applying the maxim, *de minimis non curat lex,* when we say that there is no evidence to go to the jury, we do not mean that there is literally and absolutely none, for as to this there could be no room for any controversy, but there is none which ought reasonably to satisfy the jury that the fact sought to be proved is established, though there is no practical or logical difference between no evidence and evidence without legal weight or probative force. The sufficiency of evidence in law to go to the jury does not depend upon the doctrine of chances. However confidently one, in his own affairs, may base his judgment on mere probability as to a past event, when he assumes the burden of establishing such event as a proposition of fact and as a basis for the judgment of a court, he must adduce evidence other than a majority of chances that the fact to be proved does exist. It must be more than sufficient for a mere guess, and must be such as tends to actual proof. But the province of the jury should not be invaded in any case and when reasonable minds, acting with-

in the limitations prescribed by the rules of law, might reach different conclusions, the evidence must be submitted to the jury. *Lewis v. Steamship Co.*, 132 N. C., 904; *Byrd v. Express Co.*, at this term. To which may be added, *Wheeler v. Schroeder*, 4 R. I., 383; *Offutt v. Col. Exposition*, 175 Ill., 472; *Day v. Railroad*, 96 Me., 207; *Catlett v. Railway*, 57 Ark., 461; *Railroad v. Stebbing*, 62 Md., 504.

Whether any proof has been adduced in this case as to the estoppel, which conforms to the legal standard, we leave as an open question, to be decided when it becomes necessary to do so. Nor need we decide whether the fact that B. F. Hilliard's children lived on the land with him as members of his family, prevented his possession from being adverse to them, and those claiming under them, after the deed was executed by Mrs. Humphreys. It is a general rule that, as between those occupying parental and filial, or *quasi* parental and filial, relations, the possession of one is presumed to be permissive, and not adverse to the other. 1 Am. & Eng. Enc. (2nd Ed.), 821. The character of the possession will depend somewhat upon the state of the proof, as no hard and fast rule applicable to all cases can well be laid down. As illustrative of the general principle, we refer to the following cases: *Burrus v. Meadors*, 90 Ala., 140; *White v. White*, 52 Ark., 188; *Douglas v. Irvine*, 126 Pa. St., 643. If Hilliard held his possession under Mrs. Humphreys from November 20, 1870, the date of her deed, to the time of his death in 1898, he having never given up the land, such possession could not have been adverse to his children, who claimed under her deed, and it can make no difference, in this connection, nor indeed when considering the question of estoppel, whether she really had any title or not. If that time is excluded from the count altogether, his previous possession was not continued long enough to presume a title in him, he having no color. If he was not holding under his mother, then as no title is shown in her and consequently none in his children by virtue of her

deed, it becomes immaterial whether his possession was adverse to his children or not, for plaintiffs, in that event, having shown no title in themselves at all must necessarily fail in the suit, however weak the title of Hilliard, or the defendants may be, the burden of the issue being on them and not on the alienees of Hilliard, the defendants. It follows, therefore, that (1) the first instruction of the court in its general charge was correct and the second was erroneous; (2) the first instruction, in response to plaintiffs' prayers, was not correct, in the abstract, as if plaintiffs showed, *prima facie,* a title and right to recover and defendants were put to their proof, the latter were not confined to their own adverse possession, but could tack to it the possession of those under whom they claimed. But the error in this instruction was immaterial for the reason we have already given, that plaintiffs must fail if Hilliard was not in possession under Mrs. Humphreys, unless hereafter they can show title in her derived in some other way. (3) The second instruction in response to plaintiffs' prayers is likewise immaterial, for the reason just given in considering the next preceding instruction. If plaintiffs show a title in Mrs. Humphreys, otherwise than by estoppel, we do not think the possession of Hilliard could be considered adverse to his children, if they lived with him on the land, and during the time of such joint occupancy; (4) the instruction in response to plaintiffs' third prayer was correct, except as to the legal effect of the deed in passing title, which was at least misleading. The refusal of the first instruction, in response to defendants' prayers, was correct. Defendants' second prayer was correct in part. Whether there is any evidence of Mrs. Humphrey's possession will depend of course upon the nature of Hilliard's possession, as the jury may find it to have been. If he held under her, his possession was in law her possession. The sixth prayer was properly refused. The other prayers of both parties are sufficiently covered by what we have already said in this opinion.

There remains to be considered the questions as to the competency of evidence.  (1) The recital in the deed of Mrs. Humphreys that Hilliard paid her the consideration, one thousand dollars, is not competent against defendants, nothing else appearing.  It is merely her unsworn declaration. If he actually paid her the money, it would at least be some evidence as to the character of his possession, that is, as to whether he claimed in his own right or under her.  (2) The census list (found in the clerk's office), offered by defendants to show that Lenora Wood was not *in esse* at the date of the deed from Mrs. Humphreys, was incompetent.  Census reports are competent to prove facts of a public nature.  As evidence they are confined to such facts and the details as to individual persons and other private matters, as the age of a particular person, or the product of a factory, are noted only as a necessary basis for the general summaries or the ultimate statement of facts affecting the public.  3 Wigmore on Ev., section 1671.  The case of *Edwards v. Logan,* 114 Ky., 312, is directly in point.  There, as here, a census list (not a census report) was found in the clerk's office, and offered to show non-age of one of the parties, whose vote had been challenged.  It was held incompetent on two grounds (a) as not being a census report, and (b) as not evidence of any matter of a private nature.  The method of proving age by documentary evidence is stated in Elliott on Ev., sections 410, 413 and 1286.  It appears that such evidence as that offered in this case was admitted in *Flora v. Anderson,* 75 Fed. Rep., 231, upon the authority of Greenleaf Ev., 483, and Stephen's Dig. of Ev., art. 34, but on referring to these books we find that the authors state that public registers and reports are evidence only of facts of a public nature, and agree in this respect with Wigmore.  The mistake in that case, we think, was in supposing that the fact proposed to be established was within that category.  There was no proof as to how this list was made or from what source the informa-

tion it purported to contain was derived, and it would hardly accord with the general rule in regard to evidence, if it was permitted to be considered as against entries in the family Bible which were introduced. (3) Testimony of a witness interested in the event of the action, as to transactions or communications between him and a deceased person from whom defendants derive title, is not, of course, competent against them. The extent of the interest is not material.

It is unnecessary to specially consider the other numerous exceptions, as they may not again be presented.

We order a new trial for the error committed in the charge to the jury, as above indicated.

New Trial.