## MAY v. LEWIS.

### (Filed March 10, 1903.)

ESTATES—*Life Estates—Wills—Construction.*

> When a will provides: "I loan unto my son my entire interest in the tract of land * * * to be his during his natural life, and at his death I give said land to his heirs, if any, to be theirs in fee simple forever ; and if he should die without heirs, said land to revert back to his next of kin," the son takes merely a life estate.

ACTION by Benjamin May against B. M. Lewis, heard by Judge *G. S. Ferguson,* at January Term, 1903, of the Superior Court of Pitt county. From a judgment for the defendant, the plaintiff appealed.

*Womack & Hayes, F. G. James* and *J. H. Pou,* for the plaintiff.

No counsel for the defendant.

CONNOR, J. The plaintiff acquired title to the land in controversy by the sixth item of the will of his mother, Mrs. Mary A. E. May, which is in the following words: "I loan unto my son Benjamin May my entire interest in the tract of land . . . to be his during his natural life, and at his death I give said land to his heirs, if any, to be theirs in fee simple forever; and if he should die without heirs, said land to revert back to his next of kin."

On December 1, 1902, the plaintiff entered into a contract with the defendant to sell him said land at the price of $5,500 and has in accordance with the terms of said contract prepared and tendered to the defendant a deed with warranty for said land, and demanded payment of the purchase money. The defendant refused to accept said deed and pay said money for that he is advised that the plaintiff has not and cannot convey to him a good and indefeasible title in fee in said land. This action is brought to compel

specific performance on the part of the defendant. The court being of the opinion that the plaintiff has only a life estate in said land rendered judgment against the plaintiff and he appealed.

The correctness of the judgment of his Honor is dependent upon the construction of the will under which the plaintiff claims title. If the devisor has concluded the limitation with the words "to be theirs in fee simple forever," there would be no doubt that, under the well settled principle known as the Rule in Shelley's Case, the plaintiff would have taken an estate in fee simple. This "rule" is too thoroughly and firmly fixed in our jurisprudence to be brought into question. *Starnes v. Hill,* 112 N. C., 1; 22 L. R. A., 598; *Nicholson v. Gladden,* 117 N. C., 497.

The limitation over by which it is provided that if he should die without heirs the land should "revert back to his next of kin," is valid as an executory devise. *Smith v. Brisson,* 90 N. C., 284, in which Ashe, J., discusses the doctrine of springing and shifting uses with much learning. It may be suggested that if the plaintiff died without heirs he could leave no next of kin, and that therefore the language of the will is equivalent to saying that if the devisee dies without heirs the land shall revert back to his heirs, which would be an absurdity. It will be observed however that the word "heirs" is to be understood in that sense which is given it by the law, and is essentially different from the term "next of kin". It is our duty, as far as possible, to give to words used by a testator their legal signification, unless it is apparent from the will itself that they were used in some other sense. "He on whom the law casts an inheritance on the death of the ancestor, is designated by the technical word 'heir.' It could not originally be used to designate on whom the law casts the goods or chattel property, for it cast them on no one, no person was appointed to succeed to the deceased ancestor;

on his death they became *bona vacantia* and were seized by the King on that account, and by him, as grand almoner, applied to pious uses, now considered superstitious.  .  .  .  . Hence it is that in the common law vocabulary there could be found no technical word to designate such successor.   After one was pointed out by the Statute of Distributions, the technical word used in regard to inheritances would not answer for that purpose; for very frequently the persons are different.   The rules of construction being very different from the canons of descent.   The meaning of the word 'heir' therefore retains its primitive and technical meaning when standing alone and unexplained by the context."   *Croom v. Herring,* 11 N. C., 393; *Nichols v. Gladden, supra; Rogers v. Brickhouse,* 58 N. C., 301.   "In the United States it has been very generally held that the term 'next of kin' when unexplained by the context, means 'next of kin' according to the Statute of Distribution."   21 Am. & Eng. Enc., p. 539.

From these authorities it is clear that the ulterior limitation is not to the same persons who would take in the same manner and quality as *heirs.*   "The Rule in Shelley's Case applies only when the same persons take the same estate, whether they take by descent or purchase."   *Mills v. Thorne,* 95 N. C., 362; or as is said by Black, J., in *Steacy v. Rice,* 27 Pa. St., 95; 67 Am. Dec., 447, "When they take in the quality of heirs."   It is for this reason that it is held that if the limitation over be to the heirs of the first taker "share and share alike" or "to be divided equally," the rule does not apply.   Any words added to the limitation which carry the estate to any other person, in any other manner or in any other quality than the canons of descent provide, will take the case out of the operation of the "Rule" and limit the interest of the first taker to an estate for his life.

If however it be suggested that the word "heirs" is limited or restricted to "issue" or "children" by the context, and

that such construction should be given it as being clearly the intention of the testator, as held in *Rollins v. Keel,* 115 N. C., 68, we would be brought to the same conclusion. In that view of the case the limitation would be to the plaintiff and to his "issue" if any, and if none, then to his next of kin.

In the view which we have taken, without any departure from the well settled principle that the "rule" is one of property and is applied without regard to the intention of the testator, we have effectuated the manifest purpose of the devisor, and given effect to every expression used by her.

We concur in the judgment of his Honor that the plaintiff cannot convey to the defendant an indefeasible estate in fee simple in the land. The judgment is therefore affirmed.

Affirmed.