MARSH v. GRIFFIN.

(Filed November 1, 1904).

1. MORTGAGES—*Acknowledgments—Husband and Wife—Acts 1889, ch. 389—Fraud.*

   Where a privy examination is properly certified it will not be held invalid because procured by fraud, duress or undue influence, unless the grantee had notice thereof or participated therein.

2. DEEDS—*Estates—Remainders—The Code, secs. 1325, 1329.*

   A deed to a person and to "her heirs and assigns during her natural life and at her death to belong to her bodily heirs, to have and to hold in fee-simple forever," conveys a fee-simple title to the grantee named.

ACTION by H. B. Marsh and others against A. T. Griffin and others, heard by *Judge R. B. Peebles* and a jury, at August Term, 1904, of the Superior Court of UNION County. From a judgment for the plaintiffs the defendants appealed.

*Redwine & Stack,* for the plaintiffs.
*Adams, Jerome & Armfield,* for the defendants.

CLARK, C. J. This is an action for foreclosure of a mortgage on the wife's land, executed by her jointly with her husband. In her answer she avers that the execution of the mortgage "was procured by the fraud and undue influence of

---

---

her said husband, who had represented to her and induced her to believe that the said mortgage was only for half the debt attempted to be secured thereby," and that relying upon his representations she failed to read the mortgage before signing the same. But there is no allegation or proof that the mortgagee had notice of or participated in such fraudulent representations. The privy examination is properly certified. Chapter 389, Acts 1889, provides that where a privy examination is properly certified it shall not be held invalid because procured by fraud, duress or undue influence unless the grantee had notice of or participated in the same. *Butner v. Blevins,* 125 N. C., 585; *Bank v. Ireland,* 122 N. C., 571; *Riggan v. Sledge,* 116 N. C., 87. The certificate is in proper form, and besides there is neither proof nor allegation of any irregularity in taking the privy examination. The wife states that she told the justice she could read, that he gave her the paper to read, that she read part of it and signed it, telling the justice she knew what it was, and that she told him (her husband being absent), in reply to his inquiry, that she signed it freely and voluntarily and without fear or compulsion of her husband. In *Butner v. Blevins,* 125 N. C., 585, this inquiry was not put, but the Court held that the grantee being ignorant of that fact was protected by chapter 389, Acts 1889.

The words of the *habendum* in the deed to the defendant are "to her, the party of the second part, her heirs and assigns during her natural life and at her death then to belong to her bodily heirs to have and to hold in fee-simple forever." The contention that this deed gave her only a tenancy in common with her children is unfounded. The Code, sec. 1329, providing that a limitation "to the heirs of a living person shall be construed to be to the children of such person," applies only when there is no precedent estate conveyed to said living person, else it would not only repeal the rule in Shelley's case

but would pervert every conveyance to "A and his heirs" into something entirely different from what those words have always been understood to mean.

Here the words "to her, the party of the second part, her heirs and assigns during her natural life" are contradictory and irreconcilable. Taking the rule that in such cases "the first words in a deed and the last words in a will control," we must disregard the words "for her natural life." There is then conferred a fee-simple upon the grantee. The additional words "and at her death then to belong to her bodily heirs to have and to hold in fee-simple forever," coming after the fee-simple already given her, if they have any effect at all, constitute simply an attempt to limit a fee tail after a fee-simple and are nugatory. Taking all the words together, if there is here anything more than the random use of legal terms by a grantor ignorant of their purport and use, we should say that the grantor meant to convey an estate for life to the defendant with remainder to the heirs of her body. This, by the rule in Shelley's case and The Code, sec. 1325, conveys a fee-simple. Construing the words strictly, as we have said, it is a conveyance to A and heirs with remainder to the heirs of her body. The words "bodily heirs" have the same meaning as "heirs of the body," and are words of limitation and not words of purchase. *Ruffin, J.,* in *Donnell v. Mateer,* 40 N. C., 7, cited since in *Worrell v. Vinson,* 50 N. C., 94, and *Leathers v. Gray,* 101 N. C., 164, 9 Am. St. Rep., 39, in which last the limitation is very similar to this. Almost in the same language as here is the limitation in *Edgerton v. Aycock,* 123 N. C., 134, and *Chamblee v. Broughton,* 120 N. C., 170, in both of which it was held that the rule in Shelley's case applied. The words used as the basis of a dictum in *Williams v. Beasley,* 60 N. C., 104, do not occur in this deed. They did occur, however, in

*Edgerton v. Aycock, supra,* and a direct ruling was made to the contrary of the dictum in *Williams v. Beasley.*

The other exceptions require no discussion. There is No Error.