EVA H. BOGGAN AND HER HUSBAND, L. L. BOGGAN, v. CLARK SOMERS ET AL.

(Filed 20 April, 1910.)

1. **Deeds and Conveyances—Construction—Heirs—Fee, Prior to 1879.**
   Deeds to lands made prior to the statute of 1879 will not be construed as a conveyance of the fee in the absence of the use of the word "heirs" in the conveyance, connected with the

name of the grantee, and descriptive in some way of the estate he is to take; and a fee will not pass when it appears only in connection with the name of the grantor.

2. Same—Descriptio Personæ.

The word "heirs" not appearing in the conveyance clause in a deed of lands to M., in connection with the name of the grantee, made before the statute of 1879, the *habendum* clause being to her "own and separate use during her natural life, and at her death, then to her daughters" and "issue of such as may not be living at the time, equally to be divided between them," the issue, if any, to take the share of their deceased parent, the words, "and issue of such as may not be living at the time to be equally divided," etc., are merely *descriptio personæ*, indicating that the children, grandchildren, or other lineal descendants should represent their ancestor, *per stirpes*, in the event provided, and take the estate conveyed by the deed, *i. e.*, a life estate.

3. Deeds and Conveyances—Life Estates—Tenants in Common—Adverse Possession—Title.

H. conveyed by deed certain lands to his daughter M. for life, then to her daughters for life, with limitation over. M. having reconveyed her interest, died leaving her daughters in possession, all of whom have since died. except one, who is a lunatic, in the asylum, and whose son lived on the lands with his grandmother and aunts until their death. and now lives there representing his mother: *Held*, that upon the death of each of the daughters her interest reverted to the grantor, or to *feme* plaintiff, the devisee of the property under the grantor's will, constituting them tenants in common as to such interest with the others.

4. Tenants in Common—Possession of One—Adverse Possession—Limitation of Actions.

That as between tenants in common, occupation and sole appropriation of the proceeds of the property by one or more of the tenants will not ripen title by adverse possession as against others of the cotenants without more, for any period short of twenty years; and there is no evidence in this case of such occupation as against *feme* plaintiff.

5. Wills—Probate Defective—Second Probate.

A second probate to a holograph will may be made correcting a defect in the first probate, which failed to state that the "will, and every part thereof, was in the handwriting of the testator."

6. Appeal and Error—Jurors—Relationship—Discretion of Court.

It is within the discretion of the trial judge to allow a new trial on the ground that a juror was related to one of the parties, and his refusal to do so is not appealable.

APPEAL from *W. J. Adams, J.,* at October Term, 1909, of ANSON.

Civil action to recover land.

The *feme* plaintiff claimed title under the will of her father,

H. B. Hammond, who died in 1883; the part of the will directly relevant to the inquiry being as follows:

"Item 8. I give to my son-in-law, W. O. Bennett, the house and lot in the town of Wadesboro in which Mary Jane, Ellen and Lydia Moore now live, and the Cash land near Wadesboro, in trust for the following purposes, to wit: That he shall allow the said Mary Jane, Ellen and Lydia Moore to occupy said house, and pay the rent of the land toward their support so long as he thinks it advisable to do so, and after he ceases to pay said rent for their benefit, the house and lot they occupy and one-half of the Cash land shall be given to my daughter, Eva Boggan, wife of L. L. Boggan, and her children, the other half of the Cash land having been disposed of by me in Item 4 of this will."

Defendant claimed title under a deed from H. B. Hammond, bearing date 6 August, 1856; the clause in the deed relevant being as follows:

"To have and to hold said lot of land, with the appurtenances, to her, the said Mary D. Moore, for her own sole and separate use during her natural life, and, at her death, then to the daughters of said Mary D. Moore and issue of such as may not be living at the time, equally to be divided between them, said issue, if any, to take the share of their deceased parent; and the said H. B. Hammond doth warrant the title of the said lot, etc., against the lawful claims of all persons whatsoever."

It was admitted that both the will and deed embraced the land in controversy; that Mary D. Moore, one of the grantees therein, died 22 August, 1873, having reconveyed her interest in the land to H. B. Hammond, and leaving her surviving four daughters, Mary Jane, Lydia, Ellen and Elizabeth Moore (now Summers); that Mary Jane Moore died without issue in 1885, Lydia Moore died without issue in 1895, Ellen Moore died without issue in 1904; that Elizabeth Moore (now Summers) is still living; that Mary D. Moore and her three daughters who are dead lived on the land from the date of the deed till their death respectively, as above set forth, and the fourth daughter, Elizabeth Moore (now Summers), is a lunatic and has been in the asylum since 1870, or about that time, and her son, Clark Summers, now about forty-five years of age, has been on the property at intervals for forty-two years, living with his grandmother and aunts till they died, and has since lived there representing his mother.

There was testimony tending to show that soon after the death of Mr. Hammond, the devisor, his son-in-law, W. O. Ben-

nett, mentioned in Item 8 of the will, acting under the will, permitted the three daughters of Mary D. Moore to continue in possession of the property, or acquiesced in such possession, and gave them the revenue arising from the property conveyed under the 8th item of the will till the death of Ellen Moore in 1904; the testimony of W. O. Bennett on that matter being as follows:

"Q. Who gave them their support after his death? A. Well, I had to begin to help them along in a few days after Mr. Hammond died. They came to me for help, when I found that he had made some arrangement for their support.

"Q. How long and to what extent did you continue this assistance? A. I continued it from about 23 October, 1883, up to 6 October, 1904, making about twenty-one years, you might say."

(Defendant objects to question and answer.)

"Q. Why did you stop? A. Ellen Moore, the last one of them, died.

"Q. State whether or not you permitted them to live in the house on the lot where they were living at Mr. Hammond's death, in accordance with the direction vested in you under the will?"

(Defendant objects.)

(Defendant objected to counsel prompting the witness about his answers, especially a different counsel from the one conducting the examination.)

"A. When Mr. Hammond died, they were living in the house. I furnished them as much as the rents of the place would justify and more. I hauled them wood. What I mean, I had not the means to give them better. I left them to the enjoyment of all the profits of the whole property without interfering with them in any way whatever under the will. All I did was under the will. Let that be understood. In three days after Mr. Hammond died I was feeding them. I went from my house to the Cash place with wagons and hauled wood for them."

There was verdict for plaintiff. The court rendered judgment in favor of plaintiff for the ownership and possession of the property, subject to the estate of Elizabeth Summers, as tenant in common of one undivided fourth interest for and during the term of her natural life, and defendant excepted and appealed.

*McLendon & Thomas, J. A. Lockhart* for plaintiff.
*J. W. Gulledge* for defendant.

HOKE, J., after stating the case: On the testimony, if believed, the *feme* plaintiff took and holds whatever interest was conveyed by her father's will, and, if this interest is sufficient to justify the plaintiff's recovery, the results of the trial should not be disturbed. And we are not called on to determine whether, on the facts in evidence, the three daughters of Mary D. Moore, referred to in Item 8, had elected to take under the will, for if this position should be conceded to defendant, we are of opinion that the plaintiff is entitled to the estate which has been awarded her by the verdict and judgment.

As heretofore stated, the defendants claim under the deed of H. B. Hammond, bearing date in 1856, and contend that this deed conveyed a fee simple to the four daughters of Mary D. Moore, and, if not, that defendant's title is protected by the statute of limitations; but neither position can be maintained.

While our Court has long shown a disposition to interpret deeds as conveying a fee simple where such a construction would manifestly best effectuate the intent of the parties, in deeds bearing date prior to the statute of 1879, they have always required, for the creation of such an estate, that, as a mere construction of the legal title on the face of the instrument, the word "heirs" should appear in the deed as connected with the name of the grantee, and descriptive in some way of his estate, and that such a construction was not permissible when it only appeared in connection with the name of the grantor.

A very full reference to many of these decisions will be found in *Real Estate Co. v. Bland, ante,* 225, and in addition to this case we will only cite the case of *Anderson v. Logan,* 105 N. C., 266, as an authority more directly apposite to the precise question presented, and in which it was held:

"3. Where there are no words of conveyance in the instrument, or where the word 'heirs' does not appear in any part of the deed except in connection with the name of the bargainor, or with some expression, such as 'party of the first part,' used in the clause of warranty, or elsewhere, to designate the grantor, the deed, if executed before the act of 1879 was passed, will be construed as vesting only a life estate in the bargainee."

Applying this principle, the deed in question, bearing date in 1856, contains the following *habendum* as descriptive of the estate conveyed:

"To have and to hold said lot of land, with the appurtenances, to her, the said Mary D. Moore, for her own sole and separate use during her natural life, and, at her death, then to the daughters of said Mary D. Moore and issue of such as may not be living at the time, equally to be divided between them, said

issue, if any, to take the share of their deceased parent; and the said H. B. Hammond doth warrant the title of the said lot, etc., against the lawful claims of all persons whatsoever."

And shows that neither in this nor any other part of the instrument does the word "heirs" appear in connection with the name of the grantee, or any one of them; and it is clear that the words, "and issue of such as may not be living at the time, equally to be divided between them, said issue, if any, to take the share of their deceased parent," were only used by the grantor as words of purchase, merely as a *descriptio personæ*, indicating that the children, or grandchildren, or other lineal descendant, should represent their mother or ancestor, and take the same estate as she would have done under the terms of the deed. This interpretation finds support in the fact that one of the witnesses seems to have been versed in the law, and the grantor himself was evidently a man of fine business qualifications, leaving a large estate intelligently disposed of by a holograph will, and both were no doubt fully aware of the requirement that the word "heirs" was necessary to the creation of a fee-simple estate.

This, then, being the correct interpretation of the deed, the will of H. B. Hammond would operate on and convey such an interest as he had, and, as the life estate was terminated by the death of each tenant, her share would accrue and inure for the benefit of the devisee and holder of the reversion under the will. Nor will the plea of the statute of limitations avail for defendant's protection. As we have stated, the deed of H. B. Hammond, under which defendant claims, conveyed to Mary D. Moore a life estate in the property, remainder for life to the daughters of said Mary D. Moore, and as each one of these daughters died her interest reverted to the grantor or his devisee, constituting her a tenant in common as to such interest with the others; and in such case our decisions are to the effect that the title of such a tenant will not be destroyed by occupation and sole appropriation of the proceeds of the property on the part of a cotenant, without more, for any period short of twenty years. *Clary v. Hatton, ante,* 107; *Dobbins v. Dobbins,* 141 N. C., 210; *Ward v. Sullivan,* 92 N. C., 93; the principle referred to being stated in this last case as follows:

"The rule, declared in *Caldwell v. Neeley,* 81 N. C., 114, that an ouster of one tenant in common by another will not be presumed from an exclusive use of the common property and the appropriation of its profits to himself for a less period than twenty years; and the result is not changed when one enters to whom a tenant in common has, by deed, attempted to convey

the entire tract; affirmed. This rule extends to purchaser of the interest of a tenant in common at execution sale, and to his vendee."

And there is no one now claiming this property adversely to plaintiff, who can show such an occupation for any such period; defendant Elizabeth Summers, so far as the evidence now discloses, not having been on the property since 1870, and Clark Summers himself not having occupied the property with any continuity except from the death of his aunt, Ellen Moore, which occurred in 1904. His wife seems to have lived upon the property from some time after her marriage, which occurred in 1894; but, from the testimony, she was only living with the aunts till the death of Ellen, and, if it were otherwise, the occupation is not of sufficient length. The deed, then, conveying this life estate to the four daughters of Mary D. Moore, and three of them being dead, and there having been no adverse occupation by any one for the time required to mature an adverse title, the judgment properly awards to *féme* plaintiff the ownership of the land, subject to a life estate of Elizabeth Summers for one undivided fourth interest.

It is further objected to the validity of the trial, that the first probate of the will of H. B. Hammond, in October, 1883, was defective, in that the statement of the witnesses examined did not comply with the statute as to holograph wills, "requiring such witnesses to state that the will and every part thereof was in the handwriting of the testator"; and that the second probate, in December, 1898, correcting such defect, was without warrant of law. But this question has been resolved against defendant's position in the case of *Steadman v. Steadman,* 143 N. C., 345.

Again, it is contended that a new trial should be awarded because it was made to appear after a verdict that one of the jurors was of kin to some of the formal parties, plaintiffs of record; but our decisions are to the effect that this is a matter in the discretion of the trial court. *S. v. Maultsby,* 130 N. C., 664, and authorities cited. And on the facts in evidence we think this discretion was properly exercised in denial of the defendant's motion.

On the entire matter we are of opinion that the cause has been correctly and carefully tried, and the judgment in plaintiff's favor should be affirmed.

No error.