FANNIE V. WHITLEY ET AL. v. L. ARENSON ET AL.

(Filed 31 January, 1941.)

1. **Deeds §§ 13a, 13b: Wills §§ 33b, 34—C. S., 1739, providing that "heirs" of living person be construed "children" applies only when no preceding estate is devised or conveyed to such living person.**

C. S., 1739, providing that a limitation to the heirs of a living person shall be construed to be to the children of such person, applies only to a devise or conveyance to the heirs of a living person when no preceding estate is devised or conveyed to such living person, the purpose of the statute being to validate devises or conveyances to the "heirs" of a living person, which under the common law would be void for want of a grantee, but the statute does not apply to a devise or conveyance to a living person and his "heirs" or "bodily heirs" or "heirs of his body" or to a living person for life, remainder to his heirs. The statute does not convert "heirs" from a word of inheritance to one of purchase, or affect the rule in *Shelley's case.*

2. **Deeds § 13a: Wills § 34—**

Since an "heir" is a person on whom the law casts an estate upon the death of the ancestor, a living person, strictly speaking, can have no heir.

**3. Deeds §§ 13a, 13b—**

The effect of C. S., 991, is to obviate the common law requirement that the word "heir" be used to convey an estate of inheritance, and to vest the fee in the first taker unless it is made to appear from the language of the deed that an estate of less dignity is intended to be conveyed, and the statute does not convert the word "heir" from a word of limitation to one of purchase, or convert a common law estate of inheritance into one for life.

**4. Deeds §§ 13a, 13b: Wills §§ 33b, 34—**

A devise or conveyance to "A and his heirs" and one to "A for life, remainder to his heirs" have the identical effect of vesting the fee in the first taker, the former by the use of words of inheritance and the latter by operation of the rule in *Shelley's case*.

**5. Same—**

The word "heir" is primarily a word of limitation and not of purchase, and will be given its technical meaning unless it is made to appear from the language of the instrument that it was used in some other permissible sense.

**6. Deeds § 13a—**

A deed to a married woman and her heirs by her present husband, with granting clause, *habendum* and warranty to "parties of the second part, their heirs and assigns," *is held* to convey to the married woman a fee tail special, which is converted into a fee simple absolute by C. S., 1734.

**7. Appeal and Error § 49b—**

The doctrine of *stare decisis* has as its purpose the stability of the law and the security of titles, and it is necessary that the established rules be uniformly observed so that those who are called upon to advise may safely give opinions on titles to real property.

**8. Deeds § 11: Wills § 33a—**

While a will or deed will be construed from its four corners to ascertain and give effect to the intent of the testator or grantor, this intent must be ascertained from the language used in the instrument, and he will be deemed to have used technical words and phrases in their legal and technical sense unless he indicates in some appropriate way that a different meaning be ascribed to them, and when he uses technical words and phrases invoking some settled rule of law, like the rule in *Shelley's case*, the rule of law will prevail.

CLARKSON, J., dissenting.

SEAWELL, J., concurs in dissent.

APPEAL by plaintiffs from *Clement, J.,* at May Term, 1940, of STANLY. Civil action to restrain sale of land under execution.

A temporary restraining order was issued and continued to the final hearing, when the facts were agreed upon and the cause submitted to the court for determination thereon. In summary, they follow:

1. On 1 March, 1920, J. I. Efird and wife conveyed a tract of land in Stanly County, consisting of 8¾ acres, to "M. E. J. Kelly and her heirs by T. D. Kelly."

A printed form was used in the preparation of this deed. The blank spaces were filled out by the county surveyor. In the premises the grantee is designated *"M. E. J. Kelly and her heirs by T. D. Kelly . . .* of the second part." In the granting clause, in the *habendum* and in the warranty the appellation of the grantee is, "*part*ies of the second part, *their* heirs and assigns." (Italics within the quotations used to show insertions with pen and ink.)

2. On 28 April, 1930, in the Superior Court of Mecklenburg County, L. Arenson obtained a judgment against T. D. Kelly and his wife, M. E. J. Kelly, for $1,000, and duly docketed transcript thereof in Stanly County. Execution was issued on this judgment, and the present action is to restrain sale thereunder.

3. Plaintiffs are the children of M. E. J. Kelly by her husband, T. D. Kelly, and were living at the time of the delivery of the deed in 1920, except Lola F. Kelly, one of the plaintiffs, who was born on 1 March, 1922.

The court being of opinion that the deed in question "conveyed to M. E. J. Kelly a fee tail special which by our statute is converted into a fee simple," held that the plaintiffs have no interest in the property, dissolved the injunction and dismissed the action. From this ruling the plaintiffs appeal, assigning errors.

*W. L. Mann and Carswell & Ervin for plaintiffs, appellants.*
*Morton & Williams for defendants, appellees.*

STACY, C. J. The case turns on the proper construction of the Efird deed of 1 March, 1920. This deed conveys an estate to "M. E. J. Kelly and her heirs by T. D. Kelly." At common law such an estate was a fee tail special, which is converted by C. S., 1734, into a fee simple absolute. *Revis v. Murphy,* 172 N. C., 579, 90 S. E., 573.

According to our previous decisions, C. S., 1739, providing that "a limitation by deed, will or other writing, to the heirs of a living person shall be construed to be the children of such person," applies only when there is "no precedent estate conveyed to said living person." *Marsh v. Griffin,* 136 N. C., 333, 48 S. E., 735; *Jones v. Ragsdale,* 141 N. C., 200, 53 S. E., 842. Nor is this section applicable "where there is a *conveyance* to a living person, with a limitation to his heirs." *Thompson v. Batts,* 168 N. C., 333, 84 S. E., 347. In other words, when the limitation is to a living person and his bodily heirs, general or special, C. S., 1734, applies and C. S., 1739, does not. *A fortiori,* the latter section would not apply when the limitation is to a living person and his heirs.

The word "heirs" is primarily a word of limitation and not a word of purchase. 8 R. C. L., 1056. In *Neal v. Nelson,* 117 N. C., 393, 23

S. E., 428, it was said that "a deed to a person not then living 'and his heirs' is void because the word 'heirs' is a word of limitation and not of purchase." *Ready v. Kearsley,* 14 Mich., 225. By the same token, then, a deed to "A and his heirs," A being alive, is good and vests in A a fee-simple estate. The word "heirs," in such a case is not a word of purchase carrying title to the heirs, but a word of inheritance qualifying the estate of the grantee. *Hunter v. Watson,* 12 Cal., 363, 73 Am. Dec., 543. And the authorities so hold. *Real Estate Co. v. Bland,* 152 N. C., 225, 67 S. E., 483; *Boggan v. Somers, ib.,* 390, 67 S. E., 965; *Walker v. Miller,* 139 N. C., 448, 52 S. E., 125.

At common law, in order to convey an estate of inheritance it was necessary that the word "heirs" appear in connection with the name of the grantee, either in the premises or in the *habendum* of the deed. 2 Blk., 298; *Real Estate Co. v. Bland, supra.* "It is familiar elementary learning," says *Ashe, J.,* in *Stell v. Barham,* 87 N. C., 62, "that the word *heirs* is necessary to be used either in the premises or *habendum* of a deed to convey an estate of inheritance." True, he was then speaking to a deed executed in 1854 and of the law as it existed prior to the enactment of ch. 148, Laws 1879, now C. S., 991, providing that a deed with or without the word "heirs" should be construed a conveyance in fee simple, "unless such conveyance in plain and express words shows, or it is plainly intended by the conveyance or some part thereof, that the grantor meant to convey an estate of less dignity." But this statute did not purport to change, and does not change, a common-law conveyance of inheritance to a conveyance of less effectiveness, *i.e.,* to one conveying only a life estate. *Cullens v. Cullens,* 161 N. C., 344, 77 S. E., 228. Quite the reverse was intended and accomplished by the statute. No Act of Assembly has been found which purports to convert words of inheritance into words of purchase.

Speaking to the question in *Smith v. Proctor,* 139 N. C., 314, 51 S. E., 889, *Hoke, J.,* delivering the opinion of the Court, said: "In cases, therefore, where the word 'heirs' or 'heirs of the body' are used, they will be construed to limit or define the estate intended to be conveyed, and will not be treated as words of purchase, and no supposed intention on the part of the testator or grantor arising from the estate being conveyed, in the first instance, for life, will be permitted to control their operation as words of limitation. In all such cases the estate becomes immediately executed in the ancestor, who becomes seized of an estate of inheritance."

An *heir,* according to Blackstone, is one upon whom the *law* casts an estate at the death of the ancestor. 2 Blk., ch. 14. "Heir" and "ancestor" are correlative terms. There can be no heir without an ancestor. Hence, there can be no heirs of the living, *nemo est haeres viventis.* One may be heir apparent or heir presumptive, yet he is not *heir,* during the

life of the ancestor. *Campbell v. Everhart,* 139 N. C., 503, 52 S. E., 201. Consequently, under the strictness of the old law, a limitation to the heirs of a living person was void for want of a grantee. The purpose of C. S., 1739, is to validate such limitations, whether created by deed, will or other writing, by construing "heirs" to mean "children," when there are any, unless a contrary intent appears, and this is its only purpose.

In ultimate effect, there is no difference between a conveyance to "A and his heirs" and a limitation to "A for life, remainder to his heirs." They both import fee-simple estates, the former by use of words of inheritance and the latter by operation of the rule in *Shelley's case.* *Starnes v. Hill,* 112 N. C., 1, 16 S. E., 1011; 2 Wash. Real Prop., 647; Williams Real Prop., 254.

In *Perrett v. Bird,* 152 N. C., 220, 67 S. E., 507, it was held that a devise to "David Oates, and the lawful heirs of his body lawfully begotten," carried the fee to David Oates.

The deed in *Harrington v. Grimes,* 163 N. C., 76, 79 S. E., 301, is identical in principle with the one here presented for construction. There, in the premises, in the granting clause, in the *habendum* and in the warranty the grantee is designated as "N. J. Buckner and her bodily heirs." The decision in that case is a direct authority for the holding here. The only difference between the deeds considered in the two cases is, that the one creates a fee tail, while the other creates a fee tail special, both of which are now converted into fee-simple estates. *Revis v. Murphy, supra.* For all practical purposes, the two cases are exactly alike. They are the same in principle. It is not perceived how we can reverse the judgment below without overruling the *Harrington-Grimes* decision, opinion by *Hoke, J.* Also, of similar import are the decisions in *Blake v. Shields,* 172 N. C., 628, 90 S. E., 764; *Paul v. Paul,* 199 N. C., 522, 154 S. E., 825; and *Sessoms v. Sessoms,* 144 N. C., 121, 56 S. E., 687.

"So, it has been held that a deed conveying land to a married woman and her heirs 'by her present husband' vests an estate in fee"—*Adams, J.,* in *Morehead v. Montague,* 200 N. C., 497, 157 S. E., 793.

The reasoning in the case of *Willis v. Trust Co.,* 183 N. C., 267, 111 S. E., 166, is likewise in full support of the judgment below. There, it was said that a deed "to Mary Regan and her bodily heirs" conveyed a fee-simple estate under C. S., 1734, which was later affected in the warranty by a limitation over in case she should die without issue or bodily heirs living at the time of her death. Here, we have no such limitation over in any part of the deed. There was no suggestion in that case, however, that the word "heirs" should be construed to mean "children."

It was said in *Marsh v. Griffin, supra,* that C. S., 1739, "providing

that a limitation 'to the heirs of a living person shall be construed to be the children of such person,' applies only when there is no precedent estate conveying to said living person, else it would not only repeal the rule in *Shelley's case,* but would pervert every conveyance to 'A and his heirs' into something entirely different from what those words have always been understood to mean." And further, "the words 'bodily heirs' have the same meaning as 'heirs of the body,' and are words of limitation and not words of purchase." To like effect are the decisions in *Worrell v. Vinson,* 50 N. C., 91; *Donnell v. Mateer,* 40 N. C., 7; *Ham v. Ham,* 21 N. C., 598; *Floyd v. Thompson,* 20 N. C., 616.

In *May v. Lewis,* 132 N. C., 115, 43 S. E., 550, *Connor, J.,* delivering the opinion of the Court, observed that according to the pertinent authorities, "the word 'heirs' is to be understood in that sense which is given it by the law," and that technical terms are to be ascribed their legal meaning, unless it clearly appears from the instrument itself that they were used in some other permissible sense. *Goode v. Hearne,* 180 N. C., 475, 105 S. E., 5; *Williams v. McPherson,* 216 N. C., 565, 5 S. E. (2d), 830.

In short, the applicable decisions are all one way, with none to the contrary. The deed in question was good at common law; it is good now. It conveyed a fee tail special then. It conveys a fee simple now. To hold otherwise would be to depart from the beaten path and to inject an element of uncertainty into the settled law as it pertains to the subject of real property. It was never the intention of the General Assembly, in any case, (1) to convert sole seizin into tenancy in common, (2) to change a fee simple into a life estate, (3) to abrogate the rule in *Shelley's case.* A limitation "to the heirs of a living person," with which the statute alone purports to deal, is not the same as a limitation to a living person and his heirs.

The doctrine of *stare decisis* has as its purpose the stability of the law and the security of titles. The use of words is subject to such a variety of combinations that often the interpretation or construction of deeds, and especially of wills, is fraught with puzzling effect upon those who are required to determine their meaning. It is therefore necessary to establish rules, and equally important that they be uniformly observed, so that those who are called upon to advise may safely give opinions on titles to real property. *Campbell v. Everhart, supra.*

Moreover, it is not to be overlooked that while the significance of a deed, like that of a will, is to be gathered from its four corners, *Triplett v. Williams,* 149 N. C., 394, 63 S. E., 79, the four corners are to be ascertained from the language used in the instrument. *McIver v. McKinney,* 184 N. C., 393, 114 S. E., 399; *Heyer v. Bulluck,* 210 N. C., 321, 186 S. E., 356. In other words, to paraphrase a certain parody,

"the recipe for gathering the purport of an instrument from its four corners, begins by saying 'first look at the corners.'" *Leathers v. Gray,* 101 N. C., 162, 7 S. E., 657. This, the trial court properly did in the instant case.

When a grantor or testator uses technical words or phrases to express his intent in conveying or disposing of property, he will be deemed to have used such words or phrases in their well-known legal or technical sense, unless he shall, in some appropriate way, indicate a different meaning to be ascribed to them. *Lytle v. Hulen,* 128 Or., 483, 275 P., 45, 114 A. L. R., 587, and annotation. See special concurrence in *Shoemaker v. Coats,* 218 N. C., 251, at p. 257. So, also, if the use of such words or phrases bring his intention within a settled rule of law, like the rule in *Shelley's case,* the latter will prevail; otherwise, technical words would have no certain meaning, and the rule of law would itself become uncertain. *Leathers v. Gray, supra.*

There is nothing here to show any intention on the part of the grantor to employ the words, "and her heirs by T. D. Kelly," other than in their ordinary sense. So understood, they convey to the grantee, M. E. J. Kelly, a fee simple estate.

The judgment below is supported by the decisions on the subject, and accordingly it will be upheld.

Affirmed.

CLARKSON, J., dissenting: The only material exception and assignment of error to be considered: Did the court below err in signing the judgment set out in the record? I think so.

N. C. Code, 1939 (Michie), sec. 1739, is as follows: "'Heirs' construed 'children' in certain limitations.—A limitation by deed, will, or other writing, to the heirs of a living person, shall be construed to be the children of such person, unless a contrary intention appear by the deed or will."

It seems that the main object of the section is to convert a contingent into a vested remainder under certain circumstances. It seems also to have been the purpose of the act to sustain a direct conveyance to the heirs of a living person. As there can be no heirs during the life of the ancestor, such a conveyance at common law would have been void unless there was something in the deed which indicated "that by 'the heirs' was meant the children of the person named." 3 Washburn Real Prop., 882. The act in question provides that in such a case the word "heirs" shall be construed to mean "children" and the limitation therefore would be good. By this construction of the section it does not affect the rule in *Shelley's case. Starnes v. Hill,* 112 N. C., 1 (2 and 23); *Hartman v. Flynn,* 189 N. C., 452.

A deed to "the heirs" of John A. Barrett, he being still alive, although void at common law, is good under the section, and is construed to be a limitation to the children of John A. Barrett, and includes afterborn children. *Graves v. Barrett,* 126 N. C., 267.

Section 1739, *supra,* providing that a limitation to the heirs of a living person shall be construed to be the children of such person, applies only when there is no precedent estate conveyed to said living person. *Jones v. Ragsdale,* 141 N. C., 200.

In *Tate v. Amos,* 197 N. C., 159, at p. 161, we find: "This Court has uniformly held that a devise to 'A,' and her children, 'A' having children, vests the estate to them as tenants in common. *Hunt v. Satter-white,* 85 N. C., 73; *Silliman v. Whitaker,* 119 N. C., 89; *Lewis v. Stancil,* 154 N. C., 326; *Cullens v. Cullens,* 161 N. C., 344; *Snowden v. Snowden,* 187 N. C., 539; *Cunningham v. Worthington,* 196 N. C., 778."

In *Mayberry v. Grimsley,* 208 N. C., 64 (65), citing authorities, it is written: "Plaintiff's action is grounded on the principle, settled by numerous decisions, that a conveyance or devise to 'Nonnie and her children' vests in Nonnie and her children then living, including any *in ventre sa mere,* as tenants in common, the present estate conveyed or devised."

In *Edmondson v. Leigh,* 189 N. C., 196 (201), citing authorities, it is said: "It is settled law in this State that the intent of the testator, as expressed by the terms and language of the entire will, must be given effect unless in violation of law. 'Every tub stands upon its own bottom,' except as to the meaning of words and phrases of a settled legal purport. A will must be construed 'taking it by its four corners.' " *Williamson v. Cox,* 218 N. C., 177 (179); *Smith v. Mears,* 218 N. C., 193 (197); *Shoemaker v. Coals,* 218 N. C., 251.

In *Boyd v. Campbell,* 192 N. C., 398, at p. 401, we find: "Whatever the former doctrine may have been, the courts do not now regard with favor the application of such technical rules as will defeat the obvious intention of the parties to a deed, it being an elementary rule of construction that their intention as expressed in the deed shall prevail unless it is repugnant to the terms of the grant or is in conflict with some canon of construction or some settled rule of law. *Seawell v. Hall,* 185 N. C., 80; *Lumber Co. v. Herrington,* 183 N. C., 85; *Pugh v. Allen,* 179 N. C., 307; *Williams v. Williams,* 175 N. C., 160; *Springs v. Hopkins,* 171 N. C., 486."

In *Buckner v. Maynard,* 198 N. C., 802, it was held: "While ordinarily and standing alone an estate conveyed by deed to 'R and children, her bodily heirs and assigns,' would carry a fee-simple estate to R, it will not so operate when taking the deed in its entirety, the intent of the

grantor is ascertained to convey the lands to R and her children as tenants in common, and such intent is in conformity with like expressions used in the other material and relevant portions of the deed."

The language in the present deed (taking it by its four corners), is as follows: (1) "This Indenture, Made this the 1st day of March in the year of our Lord one thousand nine hundred and twenty between J. I. Efird and wife A. E. Efird of the County of Stanly, and State of North Carolina, of the first part, and *M. E. J. Kelly and her heirs by T. D. Kelly,* of the County of Stanly, and State of North Carolina, of the second part." . . . (2) "Have bargained, sold and conveyed, and by these presents do bargain, sell and convey *unto the said parties of the second part, their heirs and assigns,* the following described real estate, situate, lying and being in Endy Township, in the County of Stanly, and State of North Carolina, bounded as follows, to-wit: (describing same)." . . . (3) "TO HAVE AND TO HOLD, all and singular the above granted premises, with the appurtenances, *unto the said parties of the second part, their heirs and assigns forever."* . . . (4) And the said J. I. Efird and A. E. Efird, parties of the first part, for themselves their heirs, executors and administrators, *do hereby covenant with the said parties of the second part, their heirs and assigns,"* etc.

In the deed in controversy the grantees are set out in the *premises as M. E. J. Kelly and her heirs by T. D. Kelly.* In the granting clause, *habendum* clause, the covenant, and the warranty, the grantees are referred to as the *parties of the second part,* their heirs and assigns, and not as M. E. J. Kelly, her heirs and assigns. There is no estate precedent and the word "heirs" in the premises means "children."

Construing the deed and "taking it by its four corners," the irresistible conclusion is that M. E. J. Kelly and plaintiffs, her children, took an estate in the lands described in the deed as tenants in common.

The main opinion and the defendants in their brief cite several cases to support their contention, but which I think distinguishable from the present case.

The facts in *Jones v. Ragsdale,* 141 N. C., 200: On 19 December, 1882, Alexander W. Robbins conveyed to "Zilphia S. Jones and her heirs by her present husband, Levy Jones, the land in controversy . . . To have and to hold the said land and appurtenances thereunto belonging, to the said Zilphia Jones and her heirs by her present husband, and assigns to her only use and behoof." The *habendum* clause was consistent with the granting clause. The statute, N. C. Code, 1939 (Michie), sec. 1734—Fee-tail Special was converted into fee simple became applicable. This case states further: "As stated in *Marsh v. Griffin,* 136 N. C., 334, 'The Code, section 1329 (now Revisal, sec. 1583) (Sec. 1739, *supra*), providing that a limitation to the heirs of a living person shall

5—219

be construed to be the children of such person, applies only when there is no precedent estate conveyed to said living person.' "

In *Revis v. Murphy,* 172 N. C., 579 (580), the deed contained the following: "Do give, grant, bargain, sell, convey, and confirm unto the party of the second part, her heirs by the body of F. H. Revis, and assigns forever. . . . *'To have and to hold the above described land and premises,* with all the appurtenances thereunto belonging or in any wise appertaining *unto the said party of the second part, her heirs and assigns,* to the only use and behoof *of her and her said heirs and assigns forever. And the said parties of the first part do hereby covenant to and with the said party of the second part, her heirs and assigns,* that the said parties of the first part are lawfully seized in fee simple of said land and premises, and have the full right and power *to convey the same to the said party of the second part in fee simple,* and that said land and premises are free from any and all encumbrances, and that they will, and their heirs, executors, and administrators shall, forever warrant and defend the title to the said land and premises, with the appurtenances, *unto the said party of the second part, her heirs and assigns,* against the lawful claims *of all persons whomsoever."* (Italics ours.)   At p. 581: "Counsel for defendant relied on *Kea v. Robeson,* 40 N. C., 373; *Rowland v. Rowland,* 93 N. C., 214; *Gudger v. White,* 141 N. C., 507; *Triplett v. Williams,* 149 N. C., 394; *Beacom v. Amos,* 161 N. C., 357; and other cases to the same effect, which decided that the intention of the grantor must be sought for in the language of the entire deed and the latter construed in accordance therewith; but that is what we do when we hold this estate to be a fee simple, as the grantor has used language which conveys that kind of estate and no other.   If we are to ascertain his intention by his words, that is the clear result, and if the law did not require us to give that construction to the deed, by reason of the particular words of limitation used, 'her heirs by the body of F. H. Revis,' and the statute defining what the same shall mean, we would, by a survey of the whole deed, construing one part with another, reach the same conclusion."

In *Blake v. Shields,* 172 N. C., 628, it was held: "An estate granted to 'B,' 'and to the heirs of her own body,' etc., 'it being expressly understood that the hereinafter described premises are to descend at her demise to the heirs of her body,' etc., with *tenendum* 'to have and to hold the above particularly described premises to the said party of the second part and to her heirs forever,' conveys an estate in fee tail to B. which our statute converts into a fee simple absolute.   Revisal, sec. 1578 (now sec. 1734, *supra*)."

In *Paul v. Paul,* 199 N. C., 522, the facts were: "It appears from the facts found by the trial court that on 1 June, 1905, John F. Paul

executed and delivered to Mattie Paul a deed in which for a consideration of $3,000 he conveyed 'to said Mattie Paul and the heirs of her body by Smith Paul begotten, or upon failure thereafter her death to the nearest heirs of Smith Paul, a certain tract or parcel of land in Pamlico County,' containing fifty acres. The *habendum* is 'to the said Mattie Paul, *aforesaid heirs and assigns,* and the covenants were made with *'said Mattie Paul, aforesaid heirs and assigns.'* . . . (p. 523). When John F. Paul made the deed to Mattie Paul, she had two living children by her husband, Smith Paul, and within ten lunar months thereafter another child, the defendant, Gladys P. Paul, was born to them. Mattie Paul and Smith Paul, her husband, are living." The Court said (p. 523) : "The judge presiding at the trial was of opinion that John F. Paul's deed conveyed the land in controversy to Mattie Paul and the children living and *in esse* as tenants in common. This would have been correct if the deed had been made to Mattie Paul and her children. *Tate v. Amos,* 197 N. C., 161. But it was executed 'to Mattie Paul and the heirs of her body by Smith Paul begotten.' The estate thus created was under the old law a fee tail special (2 Bl., 113), which our statute enlarges into a fee simple. C. S., 1734. . The law is clearly stated in *Revis v. Murphy,* 172 N. C., 579, and *Jones v. Ragsdale,* 141 N. C., 200. In the last case the conveyance was 'to Zilphia S. Jones and her heirs by her present husband'; and at the time the deed was executed they had one living child. It was held that Zilphia and her child were not tenants in common, the statute (C. S., 1739), providing that a limitation to the heirs of a living person shall be construed to be the children of such person, being applicable only when there is no precedent estate conveyed to the living person. *Marsh v. Griffin,* 136 N. C., 334. . . . (p. 523) This inartificial language reminds us that, as said by *Lord Chief Justice Wills,* such a construction should be made of the words of a deed *as is most agreeable to the intention of the maker,* because 'words are not the principal thing in a deed, *but the intent and design of the grantor.'* *Cobb v. Hines,* 44 N. C., 343, 349. The intent must be such as is expressed in the deed and not such as may have existed in the grantor's mind if inconsistent with the language he used. *McIver v. McKinney,* 184 N. C., 393; *West v. Murphy,* 197 N. C., 488. *Technical rules of construction* serve only as aids to this end, because the meaning of the deed largely depends upon the circumstances of the grantor as they appear in the deed itself." (Italics mine.)

It will be seen that the *habendum* is "to the said Mattie Paul aforesaid heirs and assigns" and the covenants were made with "said Mattie Paul, aforesaid heirs and assigns." Construing the deed as a whole, the Court said, at p. 534: "By this construction Mattie Paul took an estate in fee simple, defeasible upon her dying without bodily heirs by Smith Paul, living at her death."

This dissent is based on the intention of the maker, construing the will in its entirety.

The cases cited in the main opinion are not applicable.

In *Harrington v. Grimes*, 163 N. C., 76—the deed was to "N. J. Buckner and her bodily heirs," and in the *habendum* "said N. J. Buckner and her bodily heirs and assigns." *Hoke, J.*, said, at pp. 77-78: "Under the old law, the deed in question would have conveyed to N. J. Buckner an estate in fee tail, converted by our statute into a fee simple (Revisal, sec. 1578), and his Honor correctly ruled that plaintiff could make a good title (citing authorities). . . . In those cases it was held that, on a perusal of the entire instrument and by reason of the language in which same was expressed, a deed in the one case and a will in the other, it plainly appeared to be the intent of the grantor to convey only a life estate to the first taker, and that the words 'bodily heirs' and 'heirs of the body' did not refer to those persons as inheritors of such taker, but were used as a *descriptio personarum,* carrying to them an estate in remainder and as purchasers from the grantor. But no such intent can be gathered from this instrument, nor does it contain any words or expressions to qualify or affect the ordinary meaning of the words 'bodily heirs' in connection with the estate limited to N. J. Buckner, and the deed, as stated, has been properly held to convey to such grantee an estate in fee simple."

In *Sessoms v. Sessoms*, 144 N. C., 121, the language in the will was (p. 122): "I lend to my grandson, Joseph W. Sessoms, the Wyman tract of land, whereon his father, H. B. Sessoms, lived and died, the number of acres not known, to him and his lawful heirs of his body forever; and if he should die without lawful heirs of his body, I then lend it to his sister my granddaughter, Martha Sessoms, and her lawful heirs of her body forever." *Hoke, J.*, at p. 123, said: "The clause in question conferred on Joseph W. Sessoms an estate-tail, converted by our statute into a fee-simple, Revisal, Sec. 1578; and the court below was correct, therefore, in holding that Joseph W. Sessoms acquired an absolute estate under the terms of his grandfather's will."

In *Harrington v. Grimes*, 163 N. C., 76, it was decided that an estate to B. and his bodily heirs under the old law would have conferred a fee tail, which, under our statute, where a contrary intent may not be gathered from the instrument, construed as a whole, is converted into a fee simple.

In *Willis v. Trust Co.*, 183 N. C., 267, the deed was "To his daughter Mary Regan and her bodily heirs." The other clauses and the *habendum* clause is to "Mary Regan and her bodily heirs and to their only use and behoof forever." The Court said (at p. 271): "Applying these principles, we conclude that the deed should be construed as if it read 'to

Mary Regan and the heirs of her body (a fee simple, C. S., 1734), and if she should die not having such heirs or issue living at the time of her death, then to the heirs of the grantor.' C. S., 1737."

In *Morehead v. Montague,* 200 N. C., 497: "A conveyance of land 'to Della Todd during her lifetime and at her death to the heirs of her body' without additional words, would transfer the fee." . . . *Adams, J.,* said (at p. 499) : "Under the former law the estate would have been a fee tail special, but our statute provides that every person seized of an estate tail shall be deemed to be seized thereof in fee simple. C. S., 1734."

All these decisions are premised on language which converted the fee tail under C. S., 1734, into a fee simple. In the present action the intention, as shown by the whole deed, is to the contrary. Any other construction would nullify clear English language.

The true rule is stated by *Devin, J.,* in *Williamson v. Cox,* 218 N. C., 177 (179) : "The cardinal principle in the interpretation of wills is that the intention of the testator as expressed in the language of the instrument shall prevail, and that the application of technical rules will not be permitted to defeat an intention which substantially appears from the entire instrument. *Heyer v. Bulluck,* 210 N. C., 321, 186 S. E., 356; *Smith v. Mears, post,* 193. However, accepted canons of construction which have become settled rules of law and property cannot be disregarded. As was said in *May v. Lewis,* 132 N. C., 115, 43 S. E., 530 : 'It is our duty, as far as possible, to give the words used by a testator their legal significance, unless it is apparent from the will itself that they are used in some other sense.' 4 Kent's Com., 231." *Shoemaker v. Coats, supra.*

A devise to the "heirs" of a person will be construed to be his "children" in the absence of a contrary intention expressed in the instrument. *Moseley v. Knott,* 212 N. C., 651.

"In wills, in order to effectuate the intention of the testator, the word 'heirs' is sometimes construed to mean the 'next of kin' (1 Jac. & W., 388) and *children* (Ambl., 273.)." Cyc. Law Dict. Shumaker and Longdorf, p. 436.

"It may be a word of purchase, and is frequently deemed *synonymous* with '*children*,' *Cultrice v. Mills,* 97 Ohio St., 112, 119 N. E., 200, 201." Black's Law Dict., p. 888, citing a wealth of authorities.

To give meaning to the language used in the entire deed, indicates that the words "her heirs" were used as synonymous with *children.* This construction would harmonize the whole deed and all its parts and give the language, their heirs and assigns, in other parts of the deed the usual, ordinary and accepted interpretation, that more than one taker was indicated in the deed.

The cases cited by defendants deal with instances where the clear language of the deed shows a fee tail, which by statute becomes a fee simple, or where the deed is taken as a whole to gather the intention that a fee was intended to be conveyed.

In the present case to construe the deed as contended for by defendants would abrogate the "four corners" rule to gather the intention of the entire deed and nullify four times the clear language in the deed *"their* heirs and assigns." Whose heirs and assigns? "M. E. J. Kelly and her heirs (meaning children) by T. D. Kelly."

All the decisions are to the effect that the "polar star" is to gather the intention from the entire instrument. The clear language of the deed should not be struck down by technical construction. The English language is known to those who make deeds and wills, but the technical decisions of a court are sometimes unknown. They become a "feather on the water" and are blown about by every passing breeze of judicial construction. Titles are made so uncertain that instead of the intention from the language used governing the deed or will and the construction from its "four corners," every case will have to come to this Court to discover what specialized meaning will be given the English language and what rights owners have in their property; instead of settling titles to property, overly technical constructions create chaos. We have in the present majority opinion no beaten path to guide us, but are going into the jungle of judicial construction.

SEAWELL, J., concurs in dissent.