CLARKSON, J., dissenting.
SEAWELL, J., concurs in dissent.
Civil action to restrain sale of land under execution.
A temporary restraining order was issued and continued to the final hearing, when the facts were agreed upon and the cause submitted to the court for determination thereon. In summary, they follow:
1. On 1 March, 1920, J. I. Efird and wife conveyed a tract of land in Stanly County, consisting of 8 3/4 acres, to "M. E. J. Kelly and her heirs by T. D. Kelly." *Page 123 
A printed form was used in the preparation of this deed. The blank spaces were filled out by the county surveyor. In the premises the grantee is designated "M. E. J. Kelly and her heirs by T. D. Kelly . . . of the second part." In the granting clause, in the habendum and in the warranty the appellation of the grantee is, "parties of the second part, their heirs and assigns." (Italics within the quotations used to show insertions with pen and ink.)
2. On 28 April, 1930, in the Superior Court of Mecklenburg County, L. Arenson obtained a judgment against T. D. Kelly and his wife, M. E. J. Kelly, for $1,000, and duly docketed transcript thereof in Stanly County. Execution was issued on this judgment, and the present action is to restrain sale thereunder.
3. Plaintiffs are the children of M. E. J. Kelly by her husband, T. D. Kelly, and were living at the time of the delivery of the deed in 1920, except Lola F. Kelly, one of the plaintiffs, who was born on 1 March, 1922.
The court being of opinion that the deed in question "conveyed to M. E. J. Kelly a fee tail special which by our statute is converted into a fee simple," held that the plaintiffs have no interest in the property, dissolved the injunction and dismissed the action. From this ruling the plaintiffs appeal, assigning errors.
The case turns on the proper construction of the Efird deed of 1 March, 1920. This deed conveys an estate to "M. E. J. Kelly and her heirs by T. D. Kelly." At common law such an estate was a fee tail special, which is converted by C. S., 1734, into a fee simple absolute. Revis v. Murphy,172 N.C. 579, 90 S.E. 573.
According to our previous decisions, C. S., 1739, providing that "a limitation by deed, will or other writing, to the heirs of a living person shall be construed to be the children of such person," applies only when there is "no precedent estate conveyed to said living person." Marsh v.Griffin, 136 N.C. 333, 48 S.E. 735; Jones v. Ragsdale, 141 N.C. 200,53 S.E. 842. Nor is this section applicable "where there is a conveyance
to a living person, with a limitation to his heirs." Thompson v. Batts,168 N.C. 333, 84 S.E. 347. In other words, when the limitation is to a living person and his bodily heirs, general or special, C. S., 1734, applies and C. S., 1739, does not. A fortiori, the latter section would not apply when the limitation is to a living person and his heirs.
The word "heirs" is primarily a word of limitation and not a word of purchase. 8 R. C. L., 1056. In Neal v. Nelson, 117 N.C. 393, *Page 124 23 S.E. 428, it was said that "a deed to a person not then living `and his heirs' is void because the word `heirs' is a word of limitation and not of purchase." Ready v. Kearsley, 14 Mich. 225. By the same token, then, a deed to "A and his heirs," A being alive, is good and vests in A a fee-simple estate. The word "heirs," in such a case is not a word of purchase carrying title to the heirs, but a word of inheritance qualifying the estate of the grantee. Hunter v. Watson, 12 Cal. 363, 73 Am. Dec., 543. And the authorities so hold. Real Estate Co. v. Bland,152 N.C. 225,67 S.E. 483; Boggan v. Somers, ib., 390, 67 S.E. 965; Walker v. Miller,139 N.C. 448, 52 S.E. 125.
At common law, in order to convey an estate of inheritance it was necessary that the word "heirs" appear in connection with the name of the grantee, either in the premises or in the habendum of the deed. 2 Blk., 298; Real Estate Co. v. Bland, supra. "It is familiar elementary learning," says Ashe, J., in Stell v. Barham, 87 N.C. 62, "that the word heirs is necessary to be used either in the premises or habendum of a deed to convey an estate of inheritance." True, he was then speaking to a deed executed in 1854 and of the law as it existed prior to the enactment of ch. 148, Laws 1879, now C. S., 991, providing that a deed with or without the word "heirs" should be construed a conveyance in fee simple, "unless such conveyance in plain and express words shows, or it is plainly intended by the conveyance or some part thereof, that the grantor meant to convey an estate of less dignity." But this statute did not purport to change, and does not change, common-law conveyance of inheritance to a conveyance of less effectiveness, i.e., to one conveying only a life estate. Cullens v.Cullens, 161 N.C. 344, 77 S.E. 228. Quite the reverse was intended and accomplished by the statute. No Act of Assembly has been found which purports to convert words of inheritance into words of purchase.
Speaking to the question in Smith v. Proctor, 139 N.C. 314,51 S.E. 889, Hoke, J., delivering the opinion of the Court, said: "In cases, therefore, where the word `heirs' or `heirs of the body' are used, they will be construed to limit or define the estate intended to be conveyed, and will not be treated as words of purchase, and no supposed intention on the part of the testator or grantor arising from the estate being conveyed, in the first instance, for life, will be permitted to control their operation as words of limitation. In all such cases the estate becomes immediately executed in the ancestor, who becomes seized of an estate of inheritance."
An heir, according to Blackstone, is one upon whom the law casts an estate at the death of the ancestor. 2 Blk., ch. 14. "Heir" and "ancestor" are correlative terms. There can be no heir without an ancestor. Hence, there can be no heirs of the living, nemo est haeres viventis. One may be heir apparent or heir presumptive, yet he is not heir, during the *Page 125 
life of the ancestor. Campbell v. Everhart, 139 N.C. 503, 52 S.E. 201. Consequently, under the strictness of the old law, a limitation to the heirs of a living person was void for want of a grantee. The purpose of C. S., 1739, is to validate such limitations, whether created by deed, will or other writing, by construing "heirs" to mean "children," when there are any, unless a contrary intent appears, and this is its only purpose.
In ultimate effect, there is no difference between a conveyance to "A and his heirs" and a limitation to "A for life, remainder to his heirs." They both import fee-simple estates, the former by use of words of inheritance and the latter by operation of the rule in Shelley's case.Starnes v. Hill, 112 N.C. 1, 16 S.E. 1011; 2 Wn. Real Prop., 647; Williams Real Prop., 254.
In Perrett v. Bird, 152 N.C. 220, 67 S.E. 507, it was held that a devise to "David Oates, and the lawful heirs of his body lawfully begotten," carried the fee to David Oates.
The deed in Harrington v. Grimes, 163 N.C. 76, 79 S.E. 301, is identical in principle with the one here presented for construction. There, in the premises, in the granting clause, in the habendum and in the warranty the grantee is designated as "N. J. Buckner and her bodily heirs." The decision in that case is a direct authority for the holding here. The only difference between the deeds considered in the two cases is, that the one creates a fee tail, while the other creates a fee tail special, both of which are now converted into fee-simple estates. Revis v. Murphy, supra. For all practical purposes, the two cases are exactly alike. They are the same in principle. It is not perceived how we can reverse the judgment below without overruling the Harrington-Grimes decision, opinion by Hoke,J. Also, of similar import are the decisions in Blake v. Shields,172 N.C. 628, 90 S.E. 764; Paul v. Paul, 199 N.C. 522, 154 S.E. 825; and Sessoms v. Sessoms, 144 N.C. 121, 56 S.E. 687.
"So, it has been held that a deed conveying land to a married woman and her heirs `by her present husband' vests an estate in fee" — Adams,J., in Morehead v. Montague, 200 N.C. 497, 157 S.E. 793.
The reasoning in the case of Wills v. Trust Co., 183 N.C. 267,111 S.E. 166, is likewise in full support of the judgment below. There, it was said that a deed "to Mary Regan and her bodily heirs" conveyed a fee-simple estate under C. S., 1734, which was later affected in the warranty by a limitation over in case she should die without issue or bodily heirs living at the time of her death. Here, we have no such limitation over in any part of the deed. There was no suggestion in that case, however, that the word "heirs" should be construed to mean "children."
It was said in Marsh v. Griffin, supra, that C. S., 1739, "providing *Page 126 
that a limitation `to the heirs of a living person shall be construed to be the children of such person,' applies only when there is no precedent estate conveying to said living person, else it would not only repeal the rule in Shelley's case, but would pervert every conveyance to `A and his heirs' into something entirely different from what those words have always been understood to mean." And further, "the words `bodily heirs' have the same meaning as `heirs of the body,' and are words of limitation and not words of purchase." To like effect are the decisions in Worrell v. Vinson,50 N.C. 91; Donnell v. Mateer, 40 N.C. 7; Ham v. Ham, 21 N.C. 598;Floyd v. Thompson, 20 N.C. 616.
In May v. Lewis, 132 N.C. 115, 43 S.E. 550, Connor, J., delivering the opinion of the Court, observed that according to the pertinent authorities, "the word `heirs' is to be understood in that sense which is given it by the law," and that technical terms are to be ascribed their legal meaning, unless it clearly appears from the instrument itself that they were used in some other permissible sense. Goode v. Hearne,180 N.C. 475, 105 S.E. 5; Williams v. McPherson, 216 N.C. 565,5 S.E.2d 830.
In short, the applicable decisions are all one way, with none to the contrary. The deed in question was good at common law; it is good now. It conveyed a fee tail special then. It conveys a fee simple now. To hold otherwise would be to depart from the beaten path and to inject an element of uncertainty into the settled law as it pertains to the subject of real property. It was never the intention of the General Assembly, in any case, (1) to convert sole seizin into tenancy in common, (2) to change a fee simple into a life estate, (3) to abrogate the rule in Shelley's case. A limitation "to the heirs of a living person," with which the statute alone purports to deal, is not the same as a limitation to a living person and his heirs.
The doctrine of stare decisis has as its purpose the stability of the law and the security of titles. The use of words is subject to such a variety of combinations that often the interpretation or construction of deeds, and especially of wills, is fraught with puzzling effect upon those who are required to determine their meaning. It is therefore necessary to establish rules, and equally important that they be uniformly observed, so that those who are called upon to advise may safely give opinions on titles to real property. Campbell v. Everhart, supra.
Moreover, it is not to be overlooked that while the significance of a deed, like that of a will, is to be gathered from its four corners,Triplett v. Williams, 149 N.C. 394, 63 S.E. 79, the four corners are to be ascertained from the language used in the instrument. McIver v.McKinney, 184 N.C. 393, 114 S.E. 399; Heyer v. Bulluck, 210 N.C. 321,186 S.E. 356. In other words, to paraphrase a certain parody, *Page 127 
"the recipe for gathering the purport of an instrument from its four corners, begins by saying `first look at the corners.'" Leathers v. Gray,101 N.C. 162, 7 S.E. 657. This, the trial court properly did in the instant case.
When a grantor or testator uses technical words or phrases to express his intent in conveying or disposing of property, he will be deemed to have used such words or phrases in their well-known legal or technical sense, unless he shall, in some appropriate way, indicate a different meaning to be ascribed to them. Lytle v. Hulen, 128 Or. 483, 275 P. 45, 114 A.L.R., 587, and annotation. See special concurrence in Shoemaker v.Coats,218 N.C. 251, at p. 257. So, also, if the use of such words or phrases bring his intention within a settled rule of law, like the rule in Shelley'scase, the latter will prevail; otherwise, technical words would have no certain meaning, and the rule of law would itself become uncertain.Leathers v. Gray, supra.
There is nothing here to show any intention on the part of the grantor to employ the words, "and her heirs by T. D. Kelly," other than in their ordinary sense. So understood, they convey to the grantee, M. E. J. Kelly, a fee simple estate.
The judgment below is supported by the decisions on the subject, and accordingly it will be upheld.
Affirmed.